**Mehdi ABEDINI, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURAL-IZATION SERVICE, Respondent.**

No. 91–70038.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1992.

Memorandum Filed March 26, 1992.

Order and Opinion Filed July 24, 1992.

As Amended Sept. 9, 1992.

Joseph L. Feldun, Korenberg & Abramowitz, Encino, Cal., for petitioner.

Philemina M. Jones, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before: BRUNETTI, O'SCANNLAIN, and NELSON, Circuit Judges.

## ORDER

Respondent has filed a request, pursuant to Circuit Rule 36-4 of the Rules of the United States Court of Appeals for the Ninth Circuit, to redesignate the memorandum decision as an opinion, and, as such, be published. The members of the panel have voted unanimously to grant the request. Accordingly, the memorandum disposition filed March 26, 1992, 958 F.2d 376, is redesignated as an authored opinion by Judge Brunetti.

## OPINION

BRUNETTI, Circuit Judge:

### OVERVIEW

Mehdi Abedini, a native and citizen of Iran, appeals the Board of Immigration Appeals' order reversing the Immigration Judge's grant of his request for asylum and the Board of Immigration Appeals' denial of his request for voluntary departure.

### FACTS AND PROCEEDINGS BELOW

Petitioner Mehdi Abedini is a twenty-six year old single male, native and citizen of Iran, who entered the United States without inspection at San Ysidro, California on July 12, 1988. At his deportation hearings, Abedini posited five grounds in support of his belief that he would be persecuted by the Iranian government for his political and religious beliefs if deported to Iran.

First, he could be sentenced to two years in prison and nineteen lashes under Islamic law for the distribution of motion pictures and concert videos made in the Western hemisphere. He testified that in 1985, the Iranian authorities raided his place of business and confiscated his motion pictures and videos. The Ministry of Justice subsequently issued him a subpoena and warrant accusing him of distributing Western propaganda and requiring his appearance at a hearing on January 10, 1988. Second, he is in jeopardy of being conscripted into the military. He testified that fighting in the war that then existed between Iran and Iraq would be "beyond [his] belief and beyond [his] political opinion." Third, he could be sentenced to a two-year prison term for using a false passport to leave Iran. Fourth, he does not believe in the Islamic religion; conscience is his own religion, which he fears to express for fear of persecution. Finally, he is a monarchist and the Iranian government feels "great animosity" towards monarchists.

The Immigration Judge granted Abedini political asylum because he found Abedini's testimony to be credible and that he had a well-founded fear of persecution based on his religious and political ideas. The Board of Immigration Appeals reversed on two grounds: one, that even assuming Abedini's testimony was truthful, he had not established a well-founded fear of persecution on account of any of the grounds enumerated in the Immigration and Nationality Act; and two, that Abedini's testimony was not credible. The Board further denied Abedini's request for voluntary departure.

## DISCUSSION

I. *Standard of Review.*

We review de novo the Board's determination of purely legal questions re-

garding the requirements of the Immigration and Nationality Act. *Alonzo v. INS,* 915 F.2d 546, 548 (9th Cir.1990).

■ We review factual findings underlying the Board's denial of asylum and withholding of deportation under the substantial evidence standard, *Alonzo,* 915 F.2d at 548, and will reverse only if the evidence presented to the Board was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. *INS v. Zacarias,* — U.S. —, —, 112 S.Ct. 812, 815, 817, 117 L.Ed.2d 38 (1992).

■ Discretionary denials of asylum and of voluntary departure are reviewed for abuse of discretion. *Cunanan v. INS,* 856 F.2d 1373, 1347 (9th Cir.1988).

## II. *Denial of Asylum.*

Under Section 208(a) of the Refugee Act of 1980 (codified in the Immigration and Nationality Act at 8 U.S.C. § 1158(a)), the Attorney General has discretion to grant asylum to an applicant who is unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

■ To meet the statutory criteria of a "well-founded fear of persecution," the applicant must show that his fear is both subjectively genuine and objectively reasonable. *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1452–1453 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The objective component requires a showing by "credible, direct, and specific evidence" of facts that would support a reasonable fear that the applicant faces persecution. *Rodriguez–Rivera v. INS,* 848 F.2d 998, 1002 (9th Cir.1988) (per curiam).

We need not reach the Board's determination that Abedini's testimony lacked credibility because we find that the evidence presented to the Board was not so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.

■ Standing alone, Abedini's claim of potential prosecution for distributing Western films and videos does not amount to persecution on account of his political or religious beliefs. Abedini merely has established that he faces a possibility of prosecution for an act deemed criminal in Iranian society, which is made applicable to all people in that country. *See Estrada–Posadas v. INS,* 924 F.2d 916, 920 (9th Cir.1991) (persecution must be appreciably different from that found by fellow citizens); *Kaveh–Haghigy v. INS,* 783 F.2d 1321, 1323 (9th Cir.1986) (per curiam) (generalized allegations of persecution resulting from the political climate of a nation not sufficient). Likewise, Abedini's claim of punishment for avoiding military conscription or using a false passport does not amount to persecution under the long-standing rule that it is not persecution for a country to restrict travel abroad or require military service of its citizens. *See Zacarias,* 112 S.Ct. at 816; *De Valle v. INS,* 901 F.2d 787, 792 (9th Cir.1990) (conscription by itself does not equal persecution); *Matter of Matelot,* 18 I. & N.Dec. 334 (BIA 1982) (prosecution for violating limitations or restrictions on travel abroad, such as through the use of a fraudulent passport, does not in itself establish persecution).

■ The exception to these general rules, where a disproportionately severe punishment would result on account of one of the five grounds enumerated in the Act, does not apply for two reasons. First, Abedini failed to establish that his distribution of Western films or refusal to serve in the military were motivated by genuine religious, political, or moral convictions, or other genuine reasons of conscience. Second, he failed to establish that the anti-propaganda and conscription laws as applied to him were especially unconscionable or were merely a pretext to persecute him for his beliefs or characteristics. *See Alonzo,* 915 F.2d at 548 (applicant must demonstrate government knew of his religious or political beliefs and attempted to conscript him in spite of those beliefs); *Hernandez–Ortiz v. INS,* 777 F.2d 509, 516–17 (9th Cir.1985) (inference of political motivation based on absence of criminal activity or other conduct that would provide legit-

imate basis for government action); UNHCR, *Handbook on Procedures and Criteria for Determining Refugee Status* ¶ 85 (1979).

■ Abedini argues that the Board incorrectly demanded that he personally possess some belief or opinion, instead of focusing on the Iranian government's perception of his political opinion. The distribution of Western films and his flight to avoid conscription are "fortuitous manifestation(s)" of his anti-government beliefs which could have led the Iranian government to impute a political or religious opinion to him. He cites Ninth Circuit precedent that, on "limited occasions, certain conscious and deliberate acts or decisions by an alien may establish a well-founded fear of persecution on account of imputed political opinion, but only when a persecutor attributes political beliefs to an alien as a result of these acts or decisions." *Estrada–Posadas*, 924 F.2d at 919 (citations omitted). This argument fails, however, because nothing in the record suggests Abedini has done or said anything that could have come to the attention of the Iranian government that would cause it to impute a political or religious belief to him for which he might be persecuted.

■ Abedini did not show that the government was aware of his alleged beliefs. In fact, he admitted he never spoke out against the government's political or religious practices or even publicly articulated any political or religious opinions. *See Arriaga–Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir.1991) (relevant factor for determining imputed opinion). Nor did he testify that his movies were contrary to Islamic principles or even espoused Western beliefs, only that they were made in the West. There is no reason, therefore, for the Iranian government to attribute a special belief

or opinion to Abedini.[1] The Iranian government could construe Abedini's distribution of Western films, avoidance of conscription, and illegal exit from the country in a number of ways—as actions based purely on economics, for example. *See Zacarias*, 112 S.Ct. at 815 (variety of reasons to avoid conscription). Abedini testified that none of his other family members in Iran had been subject to persecution. *See Arriaga–Barrientos*, 937 F.2d at 414 (relevant factor for determining imputed opinion); *Sarvia–Quintanilla v. INS*, 767 F.2d 1387, 1394 (9th Cir.1985). Further, the fact that he was able to attend a law university in an experimental institute and to continue profiting from his filmmaking activities *after* the alleged confiscation of his property in 1985 evidences that the government did not consider him to have held beliefs so contrary to their regime as to warrant persecution.

Accordingly, we find that substantial evidence supports the Board's holding that Abedini failed to provide direct and specific evidence of facts that would support a reasonable fear that he faces persecution on account of any of the grounds enumerated in the Immigration and Nationality Act.

### III. *Voluntary Departure.*

■ After finding Abedini ineligible for political asylum, the Board addressed and ultimately rejected Abedini's request for voluntary departure. Under the Immigration and Nationality Act, the Board has the authority to grant voluntary departure in lieu of deportation. 8 C.F.R. § 244.1 (1990); *id.* § 3.1(b)(2); *Cunanan*, 856 F.2d at 1374. To be eligible for voluntary departure, the applicant must prove that he has been of good moral character for at least the five years preceding his application. 8 U.S.C. § 1254(e). In addition to the statutory eligibility requirements, the applicant must also show equities meriting such

---

1. We recognize that the Iranian government's prosecution of individuals who propagate Western culture could be labeled a "political" act. That does not mean, however, that Iran's prosecution of individuals amounts to *persecution*. The Supreme Court, reversing our decision in *Zacarias v. INS*, 921 F.2d 844 (9th Cir.1990), recently held that persecution must be on ac-

count of the victim's political opinion, not the persecutor's. *INS v. Zacarias*, 112 S.Ct. at 816. Thus, Abedini had the burden of showing that the Iranian government's potential act of persecution stemmed from its desire to single him out for unique punishment because of his actually-held or perceived-to-be-held political or religious beliefs.

treatment. *Villanueva–Franco v. INS,* 802 F.2d 327, 329 (9th Cir.1986).

In reviewing whether the Board properly denied an applicant voluntary departure, we may examine only whether the Board actually exercised its discretion and whether it did so in an arbitrary and capricious manner. *Estrada–Posadas,* 924 F.2d at 920; *Cuevas–Ortega v. INS,* 588 F.2d 1274, 1278 (9th Cir.1979). The Board need only support its conclusion "with a reasoned explanation based on legitimate concerns." *Hernandez–Luis v. INS,* 869 F.2d 496, 499 (9th Cir.1989); *Vargas v. INS,* 831 F.2d 906, 908 (9th Cir.1987).

Section 101(f)(6) of the Immigration and Nationality Act states that "one who has given false testimony for the purpose of obtaining any benefits under this Act" during the pertinent period cannot be regarded as possessing "good moral character" and is thus statutorily ineligible for voluntary departure. 8 U.S.C. § 1101(f). It is undisputed that Abedini provided false statements to the immigration officials when he was initially arrested for illegally entering the United States. He presented a forged passport and stated that he was who his passport said he was, falsely declared that his mother was American and he was thus an American citizen, and gave them a false name for his father.

Because it was unclear from the record whether Abedini gave the false statements while under oath, the Board did not find him statutorily ineligible. Instead, the Board denied voluntary departure as a matter of discretion. Because of the above fraudulent statements, and the facts that he did not have immediate family living in the United States nor any other significant ties to the country, and had not shown any other significant equities in his favor, favorable exercise of discretion was not warranted.

We find that the Board's decision was not arbitrary and capricious. Abedini's contention that the Board failed to take into consideration his inability to obtain a valid passport is not relevant. The Board's denial focused not on the fraudulent passport, but on the *presentation* of the fraud-

ulent passport as being a valid passport. Abedini did not confess the forgery and other falsehoods he told at the initial immigration inspection; he waited until confronted at the secondary inspection with an INS official who was aware already of the forgery.

We also reject Abedini's argument that the Board should have remanded to the Immigration Judge to decide whether voluntary departure was warranted. He presents no authority indicating that remand is necessary, and we are not prepared to create any such rule.

AFFIRMED.