990 F.2d 1258
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jiri MELICHAR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70410.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 3, 1993.*
Decided March 22, 1993.
 
 Before EUGENE A. WRIGHT, CANBY and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jiri Melichar, a native and citizen of the former Czechoslovakia, petitions for review of a decision of the Board of Immigration Appeals ("BIA") upholding an immigration judge's denial of his application for asylum and withholding of deportation. We deny the petition for review.
 
 
 3
 In September 1989, Melichar entered the United States as an officer aboard a Czechoslovak merchant marine ship. He deserted the ship in Louisiana and travelled to Seattle. In November 1989, Melichar filed an application for asylum and withholding of deportation in which he alleged that he had been persecuted in Czechoslovakia because of both his refusal to join the Communist Party and his religious beliefs. In February 1990, a hearing was held before an immigration judge ("IJ"). Melichar was represented by counsel, and the proceedings were translated from English to Czech. The IJ denied Melichar's application for asylum and withholding of deportation, but granted him voluntary departure. Melichar's appeal to the BIA was dismissed in May 1991. Melichar filed a timely petition for review.
 
 I. Denial of Asylum
 
 4
 Melichar contends that the BIA erred when it ruled that he failed to present sufficient evidence of past persecution or a well-founded fear of future persecution to establish his eligibility for asylum. We disagree.
 
 
 5
 We review the BIA's denial of asylum for an abuse of discretion. Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). The factual findings underlying the BIA's decision are reviewed under the substantial evidence standard. Id. We will reverse the BIA's decision only if the evidence presented by the petitioner is so compelling that a reasonable factfinder would have to find the requisite fear of persecution. Id. (citing INS v. Zacarias, 112 S.Ct. 812, 815, 817 (1992)). An alien may establish eligibility for asylum on the basis of either past persecution or a well-founded fear of future persecution. INS v. Cardoza-Fonseca, 480 U.S. 421, 428 (1987); Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988).
 
 
 6
 The statutory term "persecution" or "well founded fear of persecution" has been defined in this Circuit as encompassing more than just restrictions or threats to life and liberty. Most simply, we have stated that persecution involves "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive."
 
 
 7
 Desir, 840 F.2d at 726-27 (citations omitted).
 
 
 8
 At the hearing before the IJ, Melichar testified that he was born in Czechoslovakia and had lived there his entire life. His parents, wife, and children remain in Czechoslovakia. Melichar stated that he did not belong to any political organizations in Czechoslovakia, nor was he involved in any anti-government activities. He began working as a crewman in the merchant marine in 1979 and was promoted to second mate sometime after 1986. He testified that during his ten years in the merchant marine, he was often offered membership in the Communist Party, but he always refused. In his written application, Melichar stated that the captain of the ship questioned him repeatedly about his refusal to join the party and forced him to sign a statement to document his refusal. At the hearing, Melichar alleged that his refusal to join the Party caused him "many little bothers"; for example, he could not enroll his children in kindergarten and his job was endangered. Nevertheless, he admitted that he had never actually lost his job and, in fact, he had been promoted. In both his written application and his hearing testimony, Melichar alleged that when he was in Czechoslovakia on leave from the ship, he was questioned by Communist Party officials, his apartment was searched by the secret police, and his telephone was tapped.
 
 
 9
 Melichar's application also stated that he was a devout Catholic, but he was unable to practice his religion openly in Czechoslovakia and had been reprimanded by the ship's captain for attending church services in various foreign port cities. Furthermore, he testified that approximately five months before he deserted the ship, the captain warned him that he might lose his job if he continued to attend church services. He admitted, however, that during his previous 9 1/2 years on the ship, no one had bothered him about his religion. Finally, Melichar testified that if he returned to Czechoslovakia, he would not have a job because he had deserted the ship.
 
 
 10
 The BIA reviewed this evidence and concluded that Melichar had neither established a well-founded fear of persecution nor demonstrated past persecution sufficient to justify asylum on humanitarian grounds. In particular, the BIA noted that (1) Melichar's testimony regarding the alleged searches of his apartment and wiretaps on his phone lacked specific details; (2) despite his refusal to join the Communist Party, Melichar had been employed on the ship for ten years; and (3) his parents, wife, and children remained in Czechoslovakia "without any apparent difficulties from the authorities." We conclude that the BIA did not abuse its discretion by denying asylum to Melichar. Substantial evidence supports its decision that his experiences in Czechoslovakia did not amount to persecution within the meaning of the Immigration and Nationality Act. See Desir, 840 F.2d at 729.[1]
 
 
 11
 Melichar's reliance on In re Chen, Interim Decision 3104 (BIA 1989), is misplaced. In Chen, the BIA ruled that where an alien or his family has suffered "atrocious forms of persecution," humanitarian considerations may warrant a grant of asylum "even if there is no likelihood of future persecution." Id., slip op. at 5. Melichar's allegations of persecution do not even come close to the level of mistreatment suffered by Chen and his family. Accordingly, the BIA did not abuse its discretion by concluding that humanitarian concerns did not require a grant of asylum in this case.[2]
 
 II. Due Process Claims
 
 12
 Melichar contends that he was denied due process at his hearing because (1) the translator did not accurately translate his testimony; and (2) the transcript did not contain all of his testimony. We reject these contentions.
 
 
 13
 To prevail on a claim that the translation services provided at a deportation hearing violated due process, the petitioner must "show that a better translation would have made a difference in the outcome of the hearing." Acewicz v. INS, No. 91-70257, slip op. 969, 982 (9th Cir. Feb. 4, 1993) (citing Tejeda-Mata v. INS, 626 F.2d 721, 727 (9th Cir.1980), cert. denied, 456 U.S. 994 (1982)).
 
 
 14
 To support his claim that the translation was inadequate, Melichar presented to the BIA an affidavit from Frank Vojta, who assisted Melichar's attorney at the hearing. In his affidavit, Vojta stated that the translator failed to translate properly Melichar's testimony and that, because of this mistranslation, the record did not accurately reflect his testimony. Melichar also referred to a point in the hearing transcript where his attorney asked the IJ what should be done if a segment of the testimony had been omitted. With the exception of this inquiry, however, Melichar testified without any objection from his attorney.
 
 
 15
 It is undisputed that the translator was sworn in accordance with 8 C.F.R. § 242.12. Moreover, as the BIA noted, Melichar's attorney never objected to the translation or challenged the translator's ability, despite Vojta's presence at the hearing. Nor was Melichar's credibility adversely affected by the allegedly inaccurate translation; the BIA considered his testimony to be credible. In his briefs on appeal, Melichar makes conclusory allegations that the translation was inaccurate and the transcript incomplete, but he fails to point to any specific testimony that was mistranslated or omitted. Therefore, because Melichar has not cited any "instances in which an incorrect or incomplete translation prevented him from presenting relevant evidence[,]" we conclude that the BIA did not err by rejecting his due process claims. See Acewicz, slip op. at 982.
 
 
 16
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Melichar's argument that the BIA erred by denying him withholding of deportation also lacks merit. Because Melichar failed to demonstrate a well-founded fear of persecution, he has not shown the clear probability of persecution required for withholding of deportation. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir.1992) (the "clear probability of persecution" required for withholding of deportation is a more stringent standard than the "well-founded fear of persecution" required for asylum)
 
 
 [2]
 In its decision, the BIA also took administrative notice of recent changes in the government of Czechoslovakia and concluded that, because of these changes, Melichar's fear of future persecution by the Communists lacked foundation. In his brief on appeal to the BIA, Melichar acknowledged that changes had occurred and stated that the BIA "is certainly free to take judicial notice of the changed circumstances in Czechoslovakia[.]" Similarly, in his opening brief on appeal to this court, Melichar conceded that the "situation in Czechoslovakia has changed drastically" since he applied for asylum, and that this court "is free to take judicial notice of these facts." Because Melichar did not object to the BIA's use of administrative notice, we need not consider this issue. Moreover, we note that Melichar argued before both the IJ and the BIA that the changed circumstances in Czechoslovakia did not alleviate his fear of persecution. Cf. Acewicz v. INS, No. 91-70257, slip op. 969, 977 (9th Cir. Feb. 4, 1993) (BIA did not abuse its discretion by taking administrative notice of changes in the government of Poland because petitioners had ample opportunity to argue before the IJ and the BIA that their fears of persecution remained well-founded despite these changes)