28 F.3d 104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kamal BENLITIFAH, Zenab Zriba, Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70040.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1994.
Decided June 17, 1994.
 
 1
 Before: WIGGINS, THOMPSON, Circuit Judges, EZRA*, District Judge, sitting by designation.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioners Kamal Benlitifah ("Petitioner") and his wife Zenab Zriba (collectively "Petitioners") appeal the Board of Immigration Appeals' decision to reject their claims for asylum, withholding of deportation, and suspension of deportation.
 
 FACTS
 
 4
 Petitioner came to the United States in 1978 to study, on a scholarship from the Libyan government. He returned to Libya in 1981 to get married and reentered the United States in November of that year. His wife returned to Libya briefly in 1982, and was questioned. Beginning in 1983, Petitioner experienced some friction with the coordinator for Libyan scholarships in the United States, and his funds were cut off about 1985. He overstayed his authorization as a non-immigrant student and the Immigration and Naturalization Service ("INS") began deportation proceedings against him in 1986.
 
 
 5
 On June 17, 1988, the Immigration Judge denied Petitioners' applications for political asylum, withholding of deportation, and suspension of deportation. Petitioner failed to depart within the time allowed by the Immigration Judge for voluntary departure. The Board of Immigration Appeals dismissed Petitioners' appeal on December 23, 1992. Petitioner timely petitions this court for review.
 
 ASYLUM
 
 6
 Petitioner contends that he is eligible for asylum under 8 U.S.C. Sec. 1158(a) because he has a "well-founded fear of persecution" on account of political opinion. In order to merit a judicial reversal of the BIA's determination, Petitioner "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992); accord Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992).
 
 
 7
 One who cannot return to his native land owing to a "well-founded fear of persecution" is a refugee under the definition of 8 U.S.C. Sec. 1101(a)(42)(A), and therefore eligible for discretionary relief from deportation pursuant to Sec. 1158(a). In order to establish that he has a "well-founded fear of persecution," Petitioner must demonstrate (1) that he has a subjective fear, and (2) that this fear has enough of a basis that it can be considered well-founded. Cardoza-Fonseca v. INS, 767 F.2d 1448, 1453 (9th Cir.1985), aff'd, 480 U.S. 421 (1987).
 
 
 8
 Petitioner relies on Blanco-Comarribas v. INS, 830 F.2d 1039 (9th Cir.1987), for his affirmative argument that he is entitled to at least a discretionary possibility of relief from deportation. In Blanco, this court reversed the BIA's denial of asylum because (1) the petitioner was found credible by the IJ, and (2) the testimony was sufficient to establish that the petitioner's fear of persecution was well-founded. In the instant appeal, Petitioner argues that the IJ found him credible and that the evidence before the IJ established that his fear of persecution was well-founded. In particular, Petitioner advances as proof of the threat of persecution a letter from his brother, which states that Petitioner's name had been placed on a list maintained by Qaddafi's paramilitary forces, and that Petitioner therefore faces imprisonment or execution.
 
 
 9
 In Blanco, the majority did not address the issue of deference to the BIA's conclusions. See 830 F.2d at 1043-44 (Wiggins, J., dissenting in part). Since that time, the Supreme Court has announced a slightly different, but highly deferential, standard of review. Elias-Zacarias, 112 S.Ct. at 817. We need not consider whether Blanco's authority has been limited because we conclude that Petitioner's arguments fail under Blanco's own criteria for its holding.
 
 
 10
 The IJ did find Petitioner's testimony "somewhat credible in his recitation of his activities." Both the IJ and the BIA, however, were skeptical about Petitioner's initial claim, later altered, that he was in fear for his life in 1978. Moreover, the assessment of the other evidence was even less generous. "The materials, the letters and other materials relating to respondent I find are self-serving in contrast to the facts which were developed during respondent's own testimony." (Emphasis supplied). Petitioner apparently never testified about the posting of his name. The IJ could reasonably have concluded that the letter was not particularly credible. It was written by Petitioner's brother, Mukhtar, who had his own scrapes with the government, but who was employed by the Ministry of Education in Libya at the time of the trial. Mukhtar, moreover, invoked Allah to bring about the downfall of the Qaddafi regime--an incautious statement if, as Petitioner now argues, the regime has nearly omnipresent intelligence agents and the penalty for dissent is long imprisonment or death. The IJ was not unreasonable for discounting such evidence.
 
 
 11
 Similarly, the IJ and BIA drew a reasonable conclusion from the evidence as a whole. The record reveals facts that defeat any objective basis for Petitioner's alleged fears. The Libyan government paid Petitioner's expenses by means of a scholarship, which was granted Petitioner despite significant competition. He received a monthly stipend for some six years; economy is as reasonable an explanation for the payment's eventual termination as any intent to persecute. His wife visited Libya and successfully returned even though her passport had expired. Other members of Petitioner's family still live there, without apparent deprivation of life or liberty.
 
 
 12
 Petitioner's tale stands in contrast to Blanco, wherein the credibility of the testimony was not questioned, and the petitioner's father was never heard from again after having been arrested for opposing the expropriation of his property. 830 F.2d at 1042, 1043. The fears alleged in the pleadings by Petitioner, by comparison, are of uncertain sincerity and, as to the facts, little more than speculation. Blanco, therefore, is not of help to Petitioner. Aguilera-Cota v. INS, 914 F.2d 1375 (9th Cir.1990), is similarly distinguishable. There, this court found absolutely no evidence suggesting that the applicant did not qualify for refugee status; the denial of asylum was founded only on an impermissible credibility determination. 914 F.2d at 1383-84. In this case, there is direct evidence that militates against finding an objective threat of persecution. Petitioner was, for example, actually supported by the Libyan government for several years. We conclude that the IJ and BIA were justified by substantial evidence to hold that Petitioners had failed to demonstrate a "well-founded fear" of persecution and therefore could not be eligible for discretionary relief from deportation as "refugees."
 
 WITHHOLDING OF DEPORTATION
 
 13
 Petitioner also claims that he is entitled to non-discretionary relief from deportation because he has demonstrated a "clear probability of persecution." United States v. Stevic, 467 U.S. 407, 424 (1987); 8 U.S.C. Sec. 1253(h) ("[t]he Attorney General shall not deport ... any alien ... if ... such alien's life or freedom would be threatened ..."). This standard, however, is a more demanding version of the requirements for discretionary relief under 8 U.S.C. Sec. 1158(a). See INS v. Cardoza-Fonseca, 480 U.S. 421, 443 (1987). "Because [Petitioner] failed to demonstrate a well-founded fear of persecution required for asylum, this Court does not need to address whether [Petitioner] would meet the more stringent standard of a clear probability of persecution required for withholding of deportation." Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir.1992).
 
 EXTREME HARDSHIP
 
 14
 Finally, Petitioner claims that he is eligible for suspension of deportation pursuant to 8 U.S.C. Sec. 1254(a)(1). His continuous physical presence in this country and his good moral character are not disputed; the issue is the existence of extreme hardship that may result from deportation. Petitioner argues in his brief that hardship would arise from potential loss of life, liberty, or property for his opposition to the current Libyan regime. We review the BIA's denial of suspension of deportation for abuse of discretion. Chung v. INS, 720 F.2d 1471, 1475 (9th Cir.1983), cert. denied, 467 U.S. 1216 (1984).
 
 
 15
 This court has "held that the BIA may define 'extreme hardship' narrowly, so as to give consideration to persecution claims only under applications for asylum or prohibition of deportation, and not with applications for suspensions of deportation. Accordingly, the BIA may conclude that claims of political persecution have no relation to a determination of 'extreme hardship' under [Sec. 1254(a)(1) ]." Kashefi-Zihagh v. I.N.S., 791 F.2d 708, 710 (9th Cir.1986) (citations omitted). The BIA did just that in this case, and concluded that the other, cognizable hardships alleged by Petitioners did not rise to the level of "extreme." Petitioner provides neither legal nor factual reasons to question this conclusion, and we find no abuse of discretion therein.
 
 
 16
 Petition for Review DENIED.
 
 
 
 *
 Hon. David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3