56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Juan Octavio SEQUEIRA-SALAS, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70863.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1995.
Decided May 11, 1995
 
 Petition for Review of an Order of The Board of Immigration Appeals, BIA No. Aio-xcf-ymn.
 BIA
 VACATED
 Before: TANG, SCHROEDER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juan Octavio Sequeira-Salas, a native and citizen of Nicaragua, petitions for review of the Board of Immigration Appeals' (BIA) decision affirming the Immigration Judge's (IJ) denial of his application for asylum and withholding of deportation. We deny his petition.
 
 A.
 
 3
 The evidence established that Sequeira-Salas's family belonged to a party affiliated with the Somoza Government, which opposed the Sandinistas. The Sandinistas forced the closure of his father's business, and his father left the country in 1980. Sequeira-Salas left the country in 1983, and the Sandinistas then confiscated the family house, even though the rest of Sequeira-Salas's family lived there. The Sandinistas subjected the family "to additional food restrictions and public defamations as being Contras." With the exception of one sister, Sequeira-Salas's family all had left Nicaragua by 1989.
 
 
 4
 In 1980, after the Sandinista Revolution, Sequeira-Salas was forced to participate in a literacy brigade, which required him to teach Marxism. He took a job working for an anti-Sandinista judge, using an assumed name because of his problems with the Marxist program. He was once beaten by a reluctant witness when delivering a summons for the judge. When a Sandinista mob discovered that he worked at the court, they broke into his house several times, destroying everything. In 1983, the judge he worked for was forced by the Sandinistas to resign, and the judge fled the country.
 
 
 5
 Sequeira-Salas testified that he left Nicaragua in part to avoid compulsory military service. His sister told him that after he had left, the neighborhood Sandinista contingent was very upset that he had avoided joining the military.
 
 
 6
 The IJ found Sequeira-Salas deportable for entry without inspection and denied his applications for asylum and withholding of deportation on August 8, 1984. After reopening proceedings, the IJ again denied relief on March 21, 1989. On August 11, 1993, the BIA affirmed the IJ's decision. Sequeira-Salas petitions for review.
 
 B.
 
 7
 The Attorney General has discretion to grant asylum to an applicant "who is unable or unwilling to return to ... [his] country because of ... a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A); 8 U.S.C. Sec. 1158(a). To show "well-founded fear," Sequeira-Salas must provide "credible, direct, and specific evidence" of facts to show that his fear is objectively reasonable. Abedini v. INS, 971 F.2d 188, 191 (9th Cir. 1992) (internal quotation omitted). Factual determinations underlying an asylum decision are reviewed under the substantial evidence standard and this court will reverse only if the evidence presented was so compelling that "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).
 
 
 8
 Sequeira-Salas first contends that the BIA erred in denying his asylum application by failing to consider the cumulative effect of evidence regarding treatment of his family and his employer, his own treatment at school and work, and his evasion of the military draft. While the evidence did establish that the Sandinistas harassed Sequeira-Salas, the evidence considered in its entirety is not so compelling that the BIA had to find an objectively reasonable fear of persecution. See Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir. 1994) (noting the "well-founded fear" standard has both subjective and objective components).
 
 
 9
 Sequeira-Salas indicates that he left Nicaragua, at least in part, to avoid military service. The requirement that Sequeira-Salas serve in the military, without more, is not political persecution. Abedini, 971 F.2d at 191. We see no reason to view Sequeira-Salas's mandatory civilian service in a literacy program differently from military service. Both are mandatory government service programs in which many people were required to participate. In addition, we note that Sequeira-Salas declined to participate in other youth programs but was allowed to remain in school.
 
 
 10
 Sequeira-Salas indicates that the "divine mob," or "Turbas," a group associated with the Sandinistas, broke into his home on several occasions. However, the break-ins were not on account of his political opinion but because he worked as an assistant to a judge in a court in which Turbas members were criminal defendants. Sequeira-Salas was attacked once when delivering a summons but he indicates the attacker was angry because he did not want to appear in court. The attack was unrelated to his political opinion.
 
 
 11
 Sequeira-Salas's uncle and father were members of the liberal party, the party of the Somoza regime, which held power before the Sandinista regime. The record does not indicate that the views of his uncle and father have been imputed to Sequeira-Salas.
 
 
 12
 In sum, although Sequeira-Salas regularly expressed unwillingness to participate in Sandinista programs, he was allowed to attend school and hold two jobs. His views did not curtail his opportunities. Nor did he face other reprisals. Substantial evidence supports the BIA's opinion.
 
 
 13
 Sequeira-Salas also argues that the Chamorro Government, now in power, is unable to restrain the Sandinista-controlled army and police. The BIA relied on an April 26, 1990, New York Times article and an INS Country Report for 1992. Sequeira-Salas complains that the country report upon which the Board relied is not a part of the record. Alternatively, he contends that the two documents relied on by the BIA in fact supported his contention regarding continued Sandinista power. Upon review of the BIA's opinion we find that, regardless of the change of government, Sequeira-Salas has not established a well-founded fear of persecution. Therefore, we need not review the BIA's decision regarding the effect of changes in the government.
 
 
 14
 We also conclude that the BIA properly denied Sequeira-Salas's application for withholding of deportation. See Estrada-Posadas v. INS, 924 F.2d 916, 920 (9th Cir. 1991) (clear probability of persecution standard requires greater showing than that required for asylum eligibility).
 
 
 15
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3