82 F.3d 423
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Erica Sharon MARTIN-HOOKER, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70337.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 26, 1996.*
Decided April 1, 1996.
 
 Before: GOODWIN, WIGGINS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Erica Sharon Martin-Hooker a native and citizen of Nicaragua, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ") denying her application for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 3
 To be eligible for a grant of asylum, an alien must qualify as a "refugee" under section 1101(a)(42)(A) of the INA. Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995). We review the BIA's determination that an individual is not a refugee under the "substantial evidence" standard. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993); Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Under this standard, we must uphold the Board's denial of asylum unless an alien demonstrates that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992). We also review the denial of withholding of deportation for substantial evidence. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992).
 
 
 4
 Asylum applicants must establish a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz, 984 F.2d at 1061. The burden is on the alien to meet this standard. See 8 C.F.R. § 208.13.
 
 
 5
 Martin-Hooker testified that she was employed as a nurse in Nicaragua and that as part of the terms of her employment she was required to perform nursing duties in the mountains to treat Sandinista government soldiers. Martin-Hooker deserted her position before completing the required three-month tour of duty, and as a result, she lost her position as a nurse at a government hospital as well as her food ration card. Martin-Hooker left Nicaragua shortly thereafter.
 
 
 6
 Martin-Hooker testified that in addition to fearing persecution because of her desertion, she also fears persecution on account of her past membership with an independent nurse's union in Nicaragua. Martin-Hooker admitted, however, that the President of the hospital where she worked was aware of her membership in the union and allowed her to continue working until her desertion from her tour of duty.
 
 
 7
 Although Martin-Hooker acknowledged the change in government in Nicaragua, she maintained that she would be in danger if she returned because she believes the Sandinistas still dominate the government. Martin-Hooker testified that she has never been arrested or detained in Nicaragua, that her mother, brother and two sisters continue to reside in Nicaragua without incident and that her two adult sons still live in the same house where she lived before her departure.
 
 
 8
 Substantial evidence supported the BIA's finding that Martin-Hooker did not establish a well-founded fear of persecution. First, sovereign nations have a right to require military service and to punish individuals for avoidance of military service. See Castillo v. INS, 951 F.2d 1117, 1122 (9th Cir.1991). Martin-Hooker has failed to establish that the Sandinistas ever believed that her desertion from her nurse's duty in the mountains was the result of any political opinion or belief. See Abedini, 971 F.2d at 191. Her claim of persecution is further undermined by the fact that her family continues to reside in Nicaragua without incident. See Cuadras v. INS, 910 F.2d 567, 571 (9th Cir.1990) (finding asylum claim undercut by family's continued safety). Finally, Martin-Hooker failed to present any evidence showing that in light of the changed conditions in Nicaragua she would be singled out for persecution upon her return. See Sanchez-Trujillo v. INS, 801 F.2d 1571, 1581 (9th Cir.1986).
 
 
 9
 We reject Martin-Hooker contention that she is entitled to asylum based on a claim of past persecution. Martin-Hooker's case is not comparable to other cases involving "atrocious forms of persecution" in which this court has found past persecution and upheld the grant of asylum on humanitarian grounds. See Acewicz, 984 F.2d at 1061. In addition, because Martin-Hooker failed to demonstrate a well-founded fear of persecution she also failed to satisfy the higher standard of "clear probability of persecution" required for withholding of deportation. See id.
 
 
 10
 On February 15, 1996, Martin-Hooker filed a motion in this court seeking to stay the appellate proceedings until the BIA acts on her motion to reopen her deportation proceedings to allow her to apply for suspension of deportation. We deny this motion. See Berroteran-Melendez, 955 F.2d at 1255 (explaining that appellate proceedings would not be stayed pending the BIA's disposition of a motion to reopen filed after the petition for review was filed because the potential for abuse of process to circumvent the BIA's discretionary power to grant to deny a stay of deportation outweighs concerns with judicial efficiency).
 
 
 11
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3