86 F.3d 1162
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alberto Alexander MORA-ARTOLA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70857.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1996.*
Decided May 17, 1996.
 
 1
 Before: BROWNING and NOONAN, Circuit Judges, and MERHIGE, District Judge**.
 
 
 2
 MEMORANDUM***
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 Petitioner Alberto Alexander Mora-Artola is a 25-year-old native and citizen of Nicaragua who came to the United States when he was thirteen. He left Nicaragua because he did not want to serve in the military as young men at that time were required by law to do. He also claims he was persecuted by the Sandinistas because of his family's involvement with the Somoza government and his brothers' refusal to serve in the Sandinista army; despite the election of the Chamorro government, he fears he will be persecuted if he returns to Nicaragua because of his family connections and his refusal to serve in the military.
 
 
 4
 Mora's asylum claim rests primarily on the Sandinistas' treatment of his relatives who were affiliated with the Somoza government. Shortly after the Sandinistas came to power, Mora's home was ransacked by mobs looking for his godfather, a former Somoza bodyguard. Mora's brother, who had worked as a messenger for the Somoza police, was jailed for a year. Another brother was forced to serve in the Sandinista military; a third, who evaded the draft, was caught and jailed for about thirty days. Mora himself refused to join the Sandinista youth movement and was threatened with suspension from school after he threatened to organize an anti-Sandinista strike. After he left the country to avoid military service, his parents told him the Sandinistas had come looking for him.
 
 
 5
 Mora was charged by an Order to Show Cause on May 31, 1989 with entering the United States without inspection near San Ysidro, California in June 1985. After a hearing in which Mora had the assistance of counsel, the immigration judge denied his application for asylum and granted his application for voluntary departure, finding that Mora had failed to establish a well-founded fear of persecution. Mora appealed the immigration judge's decision to the Board of Immigration Appeals, which dismissed his appeal, finding that Mora had never been the subject of persecution within the meaning given it by the immigration laws. The Board also found that the Immigration Judge had correctly determined that the requirement of mandatory military service was not a ground for asylum and that Mora had no well-founded fear of persecution in Nicaragua, especially in light of the change of the government. Mora appeals the decision of the Board denying him asylum to this court.
 
 ANALYSIS
 
 6
 Mora argues initially that this court should remand his case to the Board of Immigration Appeals because the BIA opinion neither adopted the Immigration Judge's decision nor made its own independent findings. The BIA opinion does refer to the two main facts supporting Mora's asylum claim--the treatment of his family members and his desire to avoid mandatory military service. It also contains references to the record, indicating that it performed its own review, and explains that two of the Immigration Judge's determinations were correct. Because the BIA opinion evinces an independent review of the record, we decline to remand on that ground.
 
 
 7
 To be eligible for asylum, Mora must establish that he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). This court reviews the factual determinations underlying a denial of asylum by the Board under the "substantial evidence" standard. Elias-Zacarias, 502 U.S. at 481. This level of deference is the same as that accorded to all other agencies' decisions. Ghebllawi v. INS, 28 F.3d 83, 85 (9th Cir.1994) (explaining that Elias-Zacarias does not require a heightened level of level of deference to Board of Immigration of Appeals decisions).
 
 
 8
 This court has noted that the Sandinistas continue to exercise considerable influence in the Chamorro government, and particularly in the military. See, e.g., Gomez-Saballos v. INS, 79 F.3d 912, 918 (9th Cir.1996) ("The general documentary evidence in the record shows the Sandinistas continue to harass and threaten those opposed to their beliefs."). As a result, this court has evaluated the threat of Sandinista persecution on a case-by-case basis, and despite the change in government, some petitioners have managed to establish their eligibility for asylum. See Montoya-Ulloa v. INS, 79 F.3d 930 (9th Cir.1996) (applicant who was blacklisted by Sandinistas established eligibility for asylum and was entitled to withholding of deportation).
 
 
 9
 Persecution has been defined as "a threat to the life or freedom of, or the infliction of suffering and harm upon, those who differ in a way regarded as offensive." Matter of Acosta, 19 I & N Dec. 211, 222 (BIA1985). Mora's threatened suspension from school does not rise to this level because, as described by Mora, the school's principal was enforcing a law against strikes--a law of general applicability. See Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992) (finding that potential prosecution for distribution of Western films in Iran did not rise to level of persecution because it was a general criminal law that applied to everyone in the country). Requiring Mora's brothers to serve in the military, and punishing them when they failed to do so, also did not constitute persecution. Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988).
 
 
 10
 Only one incident mentioned by Mora could possibly rise to the level of persecution: the incarceration of his brother who had worked for the Somoza police. Persecution of a family member does not automatically establish eligibility for asylum, however, see Shoaee v. INS, 704 F.2d 1079, 1084 (9th Cir.1983), and Mora offered no evidence that family members who lacked ties to the Somoza government were at risk for similar treatment.
 
 
 11
 Nor did Mora demonstrate a well-founded fear of future persecution. Mora was required to produce "credible, direct, and specific" evidence of facts that would support a reasonable fear of persecution. Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995). Despite the family's ties to the Somoza government, Mora's parents and one of his brothers have remained in Nicaragua without incident. See Vides-Vides v. INS, 783 F.2d 1463, 1467 (9th Cir.1986) (applicant's asylum claim undercut by fact that after the killing of his brother by the military his other siblings lived safely in El Salvador). Mora's claim is further weakened by the change in government and the elimination of mandatory military service. There is no indication Mora would be prosecuted for draft evasion if he returned to Nicaragua; even if he were, the prosecution would not constitute persecution unless he received a disproportionately severe punishment because of his political views. See Abedini, 971 F.2d at 191. Mora has offered no evidence this would be the case. Accordingly, he has failed to show he is "at particular risk" of persecution if he returns to Nicaragua. Kotasz v. INS, 31 F.3d 847, 852 (9th Cir.1994).
 
 CONCLUSION
 
 12
 Because sufficient evidence supported the Board of Immigration Appeals' decision that Mora had not suffered from persecution and did not have a well-founded fear of persecution we AFFIRM the Board's decision to deny Mora asylum.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3