

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-2005

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4887

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Chen v. Atty Gen USA" (2005). *2005 Decisions.* Paper 800.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/800

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4887

XIA YUE CHEN,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

Respondent

On Petition for Review from the Board of Immigration Appeals
Agency No. A78-746-838

Submitted Under Third Circuit LAR 34.1(a): January 13, 2005

Before: SCIRICA,[*] *Chief Circuit Judge*, ROTH, *Circuit Judge,* and IRENAS,[**] *Senior District Judge.*

(Filed    July 21, 2005  )

---

[*] This case was originally submitted to the three judge panel of Roth, Chertoff and Irenas.  Judge Chertoff subsequently resigned and Chief Judge Scirica was designated as the third member of the panel.

[**] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

OPIGON

IRENAS, *Senior United States District Judge.*

I.

Petitioner Yue Xia Chen ["Chen"] petitions for review of the decision of the Board

of Immigration Appeals ["BIA"] denying her application for asylum, withholding of

removal, and protection under the Convention Against Torture.  Chen, a citizen of the

People's Republic of China, entered the United States at St. John in the United States

Virgin Islands without inspection on or about October 20, 2001.  The INS issued a Notice

to Appear, alleging that Chen was inadmissible because she was present in the United

States without being admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i).

(AR 461-462.)  Such a person is removable under 8 U.S.C. § 1227(a)(1).  Chen conceded

her removability, but filed an application for asylum under 8 U.S.C. § 1158 and

withholding of removal under 8 U.S.C. § 1231(b)(3), and sought protection under the

Convention Against Torture.[1]  Following a hearing, an Immigration Judge ["IJ"] denied

her application on October 1, 2002.  Chen appealed the IJ's decision to the BIA, which

---

[1]United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, G.A. Res 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).  The Convention Against Torture has been implemented by regulations at 8 C.F.R. §§ 208.16 and 208.18 to require withholding of removal for an alien who can show that it is more likely than not that she will be tortured by the government or with its acquiescence upon removal to a particular country.  See also 8 U.S.C. § 1231 note (1998) (United States Policy With Respect to the Involuntary Return of Persons in Danger of Subjection to Torture).

affirmed the IJ's decision without opinion on December 16, 2003. This Petition for Review followed.

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning." Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003). To qualify for asylum, Chen must demonstrate that she meets the statutory definition of "refugee" under the Immigration and Nationality Act, which states generally that a refugee is:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42). This definition has been amended to specifically address Congress' concern with coercive family planning practices, by providing, *inter alia*, that anyone who has been "forced to abort a pregnancy . . . shall be deemed to have been persecuted on account of political opinion." Id.

Withholding of removal does not rely on the perspective of the applicant's well founded fear, but is instead appropriate only if the Attorney General determines that there is a "clear probability" that the alien's life or freedom would be threatened upon her removal to a particular country. INS v. Stevic, 467 U.S. 407, 412; see also 8 U.S.C.

3

§ 1231(b)(3)(A).

The Convention Against Torture has been implemented by regulations at 8 C.F.R. §§ 208.16 and 208.18 to require withholding of removal for an alien who can show that it is more likely than not that she will be tortured by the government or with its acquiescence upon removal to a particular country. The regulations define torture as "an extreme form of cruel and inhuman treatment," but not "lesser forms of cruel, inhuman or degrading treatment or punishment not constituting torture." 8 C.F.R. § 208.18; see also 8 U.S.C. § 1231 note (1998) (United States Policy With Respect to the Involuntary Return of Persons in Danger of Subjection to Torture).

### III.

This Court reviews an IJ's findings of fact and adverse credibility determinations with respect to asylum, withholding of removal, and Convention Against Torture claims under the substantial evidence standard. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Substantial evidence is "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998). We will defer to and uphold the IJ's adverse credibility determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). "[D]eference

4

is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). Employing this standard the Court will deny the Petition for Review.

## IV.

We begin with Chen's asylum claim. At the hearing before the IJ, Chen testified that she suffered past persecution, namely that she was forced to abort her pregnancy by the local Chinese authorities. Chen stated that four "village cadres"[2] came to her aunt's house, where Chen was hiding to conceal her pregnancy, and forced her to go to the hospital to have an abortion. (AR 21-23.) Chen testified that she begged them to let her go home and "actually resisted" the cadres. (AR 27.) At that point, two of the cadres held her hands and a third cadre repeatedly slapped her and called her a "shameless woman from my village." (Id.) Chen stated that she lost her will to resist and collapsed, at which point two doctors dragged her into an operating room and performed the abortion. (AR 27-28.)

Her only corroboration for this allegation was an unsworn letter from her father, who was still in China, stating that Chen had been seized by "village cadres" from her aunt's home and taken to the hospital where she was forced to undergo an abortion. Not only was the father not subject to any cross examination, but much of his affidavit

---

[2]Neither Chen's testimony nor the father's letter make the meaning of "village cadre" clear.

appears to be based solely on what his daughter (or others) told him.

To support her claim Chen relies heavily on a document which she referred to as an "abortion certificate." (AR 133-134.) She claimed that this document was issued by the hospital that performed the abortion. (AR 53.) The IJ questioned whether this document was genuine, or, alternatively, whether it indicated that Chen voluntarily had an abortion. (AR 52.) Relying on the Department of State's Profile of Asylum Claims and Country Conditions for China ["Country Report"], the IJ concluded that this certificate was not adequate proof of a forced abortion. (Id.) The Country Report notes that although official policy in China does not authorize physical force to coerce women to submit to an unwanted abortion, this practice still occurs, particularly in certain areas of the country where population authorities are under pressure to meet population targets. (AR 266.)

According to the Country Report, the United States Embassy in China is "unaware" of the practice of issuing abortion certificates. (AR 270.) Embassy officials are familiar with one type of document that is generally issued upon a patient's request after a voluntary abortion for the purpose of supporting a request for sick leave from work, a right provided by Chinese law. (Id.) This conclusion is consistent with the commonsense notion that government officials who force a woman to abort a child would hardly be likely to issue a certificate attesting to that fact, especially since the Country Report indicates that use of such force is not official government policy. Indeed, the

6

existence of a hospital-issued abortion certificate might support a reasonable inference that the abortion attested to in the certificate was voluntary and not procured by government force.  Thus, while the abortion certificate might support the conclusion that Chen had, indeed, undergone an abortion, hardly an unusual event in China given the government's strong push for population control, it has no probative value in establishing that any such abortion was involuntary.

Corroboration is not necessarily required to establish a petitioner's right to asylum, and relief may be granted solely on the credible testimony of the applicant. 8 C.F.R. § § 208.13(a) and 208.16(b).  In asylum and withholding of removal cases, however, the BIA has adopted rules which require corroboration in instances where it is reasonable to expect such proof from a witness and there is no satisfactory explanation for its absence. In re S-M-J-, Interim Decision 3303 (1997), available at 1997 WL 80984.  These rules have been sustained by this Court in Abdulai v. Ashcroft, 239 F.3d 542, 551-552 (3d Cir. 2001), which observed that even where an applicant is credible, corroboration may be required if the applicant is to meet her burden of proof.  Id. at n. 6.

The internal consistency of a witness's testimony, its consistency with other testimony, as well as its inherent (im)probability are important factors in determining credibility, although excessive focus on insignificant testimonial inconsistencies to support a finding of lack of credibility may not be justified.  See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  On occasions the IJ's decision seems a bit excessive in

7

its reliance on perceived inconsistencies in testimony. However, while Chen posits a possible explanation for each of the inconsistencies found by the IJ in her testimony, there is no requirement that the IJ accept each such explanation. On balance, the IJ's determination of Chen's lack of credibility is grounded in the record.

While the evidence might support the conclusion that Chen underwent an abortion, stripped to its essentials the only real proof that her abortion (if it occurred) was procured by force is Chen's own testimony. Her father's letter is not much help. Since he was still in China, he could not be subject to cross-examination in the immigration proceeding. Additionally, the letter strongly suggests that the "facts" contained therein are not based on direct knowledge, but rather on what was told to him by others.

Forced abortion is not official government policy in China, even if it sometimes occurs, and since voluntary abortions are legal and numerous, it is not unreasonable for an IJ to consider (i) the lack of corroboration of a petitioner's testimony on the issue of force and (ii) a pattern of inconsistencies in testifying about background details relating to the circumstances which give rise to her claim. There is a disturbing lack of corroboration of Chen's testimony as to the use of force to procure the abortion, and no cogent explanation of why such corroboration could not be obtained. Thus, both the absence of corroboration and the IJ's credibility finding provides support for the conclusion that Chen did not produce substantial evidence to support her asylum application.

V.

We have reviewed the record with respect to Chen's claims under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture, and find that there is an absence of substantial evidence to back either claim. Both of these claims are based on the allegation that if Chen is returned to China, she will be prosecuted and imprisoned for illegally exiting China in the first instance. Chinese law barring illegal emigration is generally applicable to all illegal emigrants who return to China, and there is nothing in the record to support a conclusion that either Chen would be singled out for particularly harsh punishment or the nature of the punishment would be severe enough to amount to persecution or torture. See Chang v. INS, 119 F.3d 1055, 1060-61 (3d Cir. 1997); Abedini v. INS, 971 F.2d 188, 191 (9th Cir. 1992).

VI.

Based on the foregoing, the Petition for Review of the decision of the IJ denying asylum under 8 U.S.C. § 1158 and denying withholding or removal under 8 § U.S.C. 1231(b)(3) and the Convention Against Torture is hereby denied.