**Martin Ernesto ALONZO, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–70287.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1990.

Decided Oct. 2, 1990.

---

Joshua R. Floum, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for petitioner.

Lori L. Scialabba, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., for respondent.

Before WIGGINS and LEAVY, Circuit Judges, and STEPHENS,* District Judge.

WIGGINS, Circuit Judge:

Martin Ernesto Alonzo, a citizen of Guatemala, contests the denial of his applications for "withholding of deportation" and political asylum. He contends that the Immigration Judge's and the Board of Immigration Appeals' adverse credibility findings are not supported by substantial evidence and that the BIA applied the wrong standards governing political neutrality and persecution to him. We have jurisdic-

tion over Alonzo's timely appeal pursuant to 8 U.S.C. § 1105a(a) and affirm.

## I. BACKGROUND

Alonzo, a citizen of Guatemala, illegally entered the United States in May of 1983. He testified that he left Guatemala due to persecution by a military commissioner, Efrain Villafuerte.

Pursuant to Guatemala law, Alonzo is exempt from active military service, but not from service in the reserves, because he is the only son of a widow who relied upon him for support. Despite Alonzo's exemption, Villafuerte made three attempts to conscript Alonzo into active military service. Villafuerte abducted Alonzo twice in 1980 and held him captive in the military barracks, but did not harm him. Villafuerte's superiors released Alonzo both times following his mother's explanation that Alonzo was exempt from military service. The third time Villafuerte abducted Alonzo, Villafuerte and his soldiers brutally beat him. Alonzo's mother once again pleaded for Alonzo's release. At no time prior to, during, or after any of Alonzo's abductions did Alonzo assert his alleged beliefs of political or religious neutrality to the Guatemalan military. In 1981, Alonzo fled Guatemala for Mexico where he stayed for two years before entering the United States.

## II. DISCUSSION

Alonzo claims two separate provisions of the immigration laws entitle him to avoid deportation. Section 243(h) of the Immigration and Nationality Act, as amended by section 203(e) of the Refugee Act, 8 U.S.C. § 1253(h), entitles a successful applicant to a "withholding of deportation." If Alonzo qualifies for withholding of deportation pursuant to section 243(h), the Attorney General is prohibited from deporting him. *Bolanos–Hernandez v. I.N.S.*, 767 F.2d 1277, 1281 (9th Cir.1984). Section 208(a) of the Refugee Act of 1980, 8 U.S.C. 1158(a), entitles a successful applicant to a grant of

---

* Hon. Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

political asylum. If Alonzo qualifies for asylum pursuant to section 208(a), the Attorney General has the discretion to authorize a permanent grant of asylum. *Bolanos–Hernandez,* 767 F.2d at 1282.

We review the factual findings underlying the BIA's denial of applications for asylum and prohibition of deportation under the substantial evidence standard. *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir. 1988). We review de novo the immigration judge's determinations of purely legal questions concerning the requirements of the applicable statutes. *Id.* We need not reach Alonzo's claim that substantial evidence does not support the BIA's and IJ's adverse credibility determination because, even accepting his factual assertions, Alonzo fails to qualify for either a grant of political asylum or withholding of deportation.

To obtain political asylum or a withholding of deportation, Alonzo must prove, respectively, that he has a "well founded fear of" or faces a "clear probability of" persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Bolanos–Hernandez,* 767 F.2d at 1281–82. In this case, Alonzo claims that Villafuerte's attempt to conscript him forcibly constitutes persecution on account of his beliefs of political neutrality. A government's conscription efforts do not constitute persecution on account of political or religious beliefs except in those rare cases where a disproportionately severe punishment would result on account of those political or religious beliefs. *See Canas–Segovia v. I.N.S.,* 902 F.2d 717, 728 (9th Cir.1990).

We find that in order for persecution to constitute disproportionately severe punishment on account of religious or political beliefs under *Canas–Segovia,* the alien must demonstrate that the government knew of his political or religious beliefs and attempted to conscript him despite those beliefs. Alonzo has failed to do so. The record does not indicate, and Alonzo does not assert, that any member of the Guatemalan military was ever aware of the alleged religious or political beliefs underlying his refusal to serve in the Guatemalan military.

At no time did Alonzo assert his alleged religious or political beliefs to the Guatemalan military. Although the absence of such an assertion is not determinative of establishing that the military knew of Alonzo's beliefs and persecuted him "on account of" political or religious beliefs, nothing about Alonzo's conduct or life-style alerted the Guatemalan military that he possessed religious or political beliefs which would be compromised by participation in the military. Alonzo did not participate in, nor did he have friends or family who participated in, religious or political organizations or demonstrations. This case thus differs from cases in which persecutors were made aware of an alien's religious or political beliefs by his conduct or participation in religious or political organizations. *See Turcios v. I.N.S.,* 821 F.2d 1396, 1401 (9th Cir.1987) (at time of arrest, alien was discussing the government's intervention in the university with a known leftist; participated in demonstrations; and other members of family opposed the government). Likewise this case differs from cases in which persecutors erroneously attributed particular political beliefs to an alien. *See, e.g., Argueta v. I.N.S.,* 759 F.2d 1395, 1397 (9th Cir.1985) (death threat based on persecutors' erroneous belief that alien was member of guerilla organization).

Indeed, unlike successful claimants who have had family members *opposed* to the government, *see Turcios,* 821 F.2d at 1396 (members of family actively opposed the government), members of Alonzo's family had served in the military. Moreover, Alonzo *volunteered* for basic training. Even Alonzo's mother never mentioned any of Alonzo's religious or political beliefs to the Guatemalan military—she obtained his release solely by asserting his entitlement to an exemption under Guatemalan law. Without some indication that the Guatemalan military knew of Alonzo's professed religious or political beliefs, we cannot say that their attempts to conscript him forcibly constitutes persecution "on account of" those beliefs.

We recognize that this case differs from those in which an alien claims persecution from a non-governmental guerilla group. An alien may establish a well-founded fear of persecution "on account of" political opinion without any expression of political belief greater than a mere refusal to join the group. *See Zacarias v. I.N.S.*, 908 F.2d 1452, 1456 (9th Cir.1990) (persecution "on account of" political opinion established solely by refusal to join guerillas and threats of harm following refusal to join without any showing that guerillas knew of alien's political beliefs of neutrality); *Maldonado–Cruz v. I.N.S.*, 883 F.2d 788, 791 (9th Cir.1989) (persecution "on account of" political opinion established solely by refusal to join and forced conscription by non-governmental guerillas without any requirement that guerillas knew of alien's political beliefs of neutrality); *Arteaga v. I.N.S.*, 836 F.2d 1227, 1331–32 (9th Cir. 1988) (persecution "on account of" political opinion established solely by refusal to join and threats of harm following refusal to join without any requirement that guerillas knew of alien's political beliefs of neutrality).

The difference between conscription by a nongovernmental group and the government lies in the legitimacy of the conscriptor's actions. "Because nongovernmental groups lack legitimate authority to conscript persons into their armies, their acts of conscription are tantamount to kidnapping and constitute persecution." *Zacarias.* Because of that lack of legitimacy, we have regularly presumed that an alien's refusal to join a guerilla group, without more, constitutes an expression of political neutrality sufficient to alert the guerillas of the alien's political beliefs. *See, e.g., Arteaga*, 836 F.2d at 1231 (resistance to forced recruitment is expression of political neutrality hostile to non-governmental persecutor's politically motivated conscription efforts). That presumption, however, ignores the possible existence of other reasons for refusing to join a guerilla group which are not on "account of" political or religious reasons. For example, an alien might refuse to join due to cowardice, or a desire to invest in his business, or a desire to spend time with an ailing parent. None of these reasons would qualify an alien for asylum or a withholding of deportation. We have recently criticized this presumption for just that reason. *See Cuadras v. I.N.S.*, 910 F.2d 567, 571 (9th Cir.1990) (finding no persecution on account of political opinion by guerila force where no evidence supports the conclusion that harassment was based on alien's political views). No reason exists to permit that presumption where the legitimate government attempts to maintain its own military forces.

The judgment of the Bureau of Immigration Appeals is AFFIRMED.