50 F.3d 19
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Chern YANG, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70733.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 13, 1995.
Decided March 15, 1995.
 
 Before: GOODWIN, CANBY and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Chern Yang, a citizen of Taiwan, petitions for review of a Board of Immigration Appeals ("BIA") decision denying Yang's requests for political asylum under 8 U.S.C. Sec. 1158(a) and withholding of deportation under 8 U.S.C. Sec. 1253(h). Because substantial evidence supports the BIA's holding and the BIA applied the correct law, we deny the petition for review.
 
 I.
 
 3
 The basic facts of the case are not in dispute. After attending a military college at the expense of his government, Yang began a long-term commitment to serve as an officer in the Taiwan army. He worked for six years as a journalist/censor in the army and in 1980 travelled to the United States on a student visa to attend graduate school at the University of Kansas. In 1981, Yang returned to his old job in Taiwan and in 1985 again travelled to the United States on a student visa. Taiwan sponsored both of Yang's trips to the U.S., and at all times Yang remained under military jurisdiction.
 
 
 4
 Disturbed by news stories of the Taiwanese government's apparent assassinations of dissident writers and provoked by a college course to rethink the role of the military in developing countries, Yang became increasingly disenchanted with the government and army he served. Due to these growing misgivings about serving Taiwan, Yang simultaneously deserted the Taiwanese army and violated U.S. immigration laws, intentionally remaining in the U.S. after his second student visa expired in 1987.
 
 
 5
 Prior to Yang's hearing before the Immigration Judge ("IJ"), Yang never expressed any opinion against the government of Taiwan. After announcing his intent to remain in the U.S., Yang's superiors warned him of the sanctions that would follow desertion. However, other than this caution, the Taiwanese government never persecuted or threatened Yang or his family in any way. Yang was never ordered to participate or directly aid the murder of a civilian. During his tenure in the army, Yang worked as a journalist and a student only, though while in the U.S., Yang periodically reported on the activities of Taiwanese nationals at the University of Kansas.
 
 
 6
 At the hearing before the IJ, Yang conceded deportability, but requested asylum and withholding of deportation. The IJ denied these requests and the BIA affirmed and dismissed Yang's appeal, finding that Yang did not meet his burden of establishing a well-founded fear of persecution.
 
 II.
 
 7
 We review BIA decisions denying withholding of deportation and asylum under the substantial evidence standard. Castillo v. INS, 951 F.2d 1117, 1120 (9th Cir.1991). We will uphold BIA decisions unless an alien demonstrates "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992).
 
 
 8
 To qualify for asylum, Yang must demonstrate that he has a well-founded fear of persecution in Taiwan on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Secs. 1158 and 1101(a)(42); Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992).
 
 
 9
 To qualify for withholding of deportation, Yang must meet a higher standard. He must demonstrate the likelihood of persecution by a preponderance of the evidence. INS v. Stevic, 467 U.S. 407 (1984). Here, the BIA held that Yang did not meet his burden of establishing a well-founded fear of persecution and, therefore, could not have met the higher burden of showing a clear probability of persecution.
 
 III.
 
 10
 Yang argues that "the IJ and BIA erred in concluding that avoidance of military service due to genuine political and moral conviction ... could not by law constitute a well-founded fear of persecution." This is not so. Whatever defects there may have been in the IJ's conception of the law, the BIA correctly stated the law and it is the decision of the BIA alone that is under review here. Elnager v. INS, 930 F.2d 784, 787 (9th Cir.1991).
 
 
 11
 As the BIA explained, punishment for evasion of military service generally does not constitute persecution on account of political beliefs. Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990). Only where a disproportionately severe punishment would result on account of those political beliefs or the punishment is based on a refusal to participate in inhuman acts is a grant of asylum appropriate for those avoiding military service. Id.; Barraza Rivera v. INS, 913 F.2d 1443, 1450-54 (9th Cir.1990).
 
 
 12
 Yang further contends that the IJ erred in making an adverse credibility finding against Yang without articulating a proper basis for such a finding. As the BIA correctly held, the IJ did not make an adverse credibility finding, but found that Yang had not submitted any objective evidence to support his subjective testimony.
 
 
 13
 Establishing a well-founded fear requires a showing of " 'credible, direct, and specific evidence' of facts that would support a reasonable fear that the applicant faces persecution." Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992), quoting, Rodriquez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam). Here, Yang introduced no evidence that he would be severely or disproportionately punished for his desertion because newfound political beliefs motivated his crime. Indeed, it is doubtful that the Taiwanese government could have known of Yang's political beliefs. As Yang himself concedes, prior to the hearing, he had never expressed any anti-government political views. He can argue only that he plans to write against his government in the future which may bring on future persecution. However, the possibility of future persecution based on this contingency is too speculative to be considered a well-founded fear. Matter of Surzycki, 13 I. & N. Dec. 261 (BIA1969).
 
 
 14
 Yang also argues that regardless of his long service as a loyal officer in the Taiwan army, uninterrupted by a single word of dissent, he will be punished merely for claiming asylum. Yang has introduced no objective evidence showing the likelihood of such retaliation. Moreover, if immigration law were interpreted to permit an alien to bootstrap his way into asylum by seeking it in a public way, no asylum petition from a citizen of any totalitarian country could be denied.
 
 
 15
 Not only has Yang introduced no evidence showing that he will be punished on account of his political beliefs, he has introduced no evidence showing that he will receive a disproportionately severe penalty. Far from facing torture or the hangman's noose back home, Yang seems most concerned that he will face a dull job on a far-off island as his reward for desertion. Our laws granting asylum to international refugees are not concerned with job demotions and social embarrassment.
 
 
 16
 Yang introduced no evidence that he had been ordered or even that he was likely to be ordered to participate in an inhuman act. Accordingly, there is no basis for any argument that Yang will be punished for his refusal to participate in an inhuman act. Yang offered a Newsweek article and the transcript of an investigative piece on "60 Minutes" to show the possible participation of Taiwan in the murder of dissident civilians, but no evidence that his military obligation would require him to participate in such acts.
 
 IV.
 
 17
 Even under his own characterization, Yang was content as a soldier, progressing up to the rank of captain. He says he developed doubt about the morality of his continued service after learning of disquieting things his government may have done and reconsidering the influence of the military establishment in his home country. Our immigration laws do not equate a foreign soldier's ethical qualms about his service with political persecution.
 
 
 18
 Because the BIA correctly stated the law and substantial evidence supports the decision of the BIA, we deny the petition for review.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3