79 F.3d 1152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edgardo Antonio CHAVEZ-DINARTE; Rosa Argentina Adan-Areas;
Edgar Federico Chavez-Adams, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70401.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 9, 1996.*
Decided March 6, 1996.
 
 Before: POOLE, WIGGINS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Edgardo Antonio Chavez-Dinarte, a Nicaraguan native, deserted from the Sandinista military in 1985, went into hiding in the Nicaraguan countryside, and illegally entered the United States in 1989. Chavez-Dinarte, his common-law wife, Rosa Adan-Areas, and their child appeal the Board of Immigration Appeals' ("BIA") denial of political asylum and order of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105(a) and AFFIRM.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 3
 The BIA's denial of asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Factual findings underlying the decision, including whether the alien has proved a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995). This review is extremely deferential, and petitioner "must demonstrate 'that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.' " Id. (quoting Elias-Zacarias, 502 U.S. at 483).
 
 II. PRELIMINARY ISSUES
 
 4
 Because petitioners did not raise their ineffective assistance of counsel claim before the BIA in a motion to reopen, they have not administratively exhausted their claims. Thus, we will not consider those claims. See Liu v. Waters, 55 F.3d 421, 424-26 (9th Cir.1995).
 
 
 5
 The BIA did not violate our rule in Castillo-Villagra v. INS, 972 F.2d 1017 (9th Cir.1992), by acknowledging in its opinion that there had been elections in Nicaragua in February 1990 in which an anti-communist was elected president. While Castillo-Villagra held that the BIA's failure to allow asylum applicants to respond to judicially noticed facts about the changed situation in Nicaragua denied them due process, id. at 1030-31, the BIA's opinion in this case makes it clear that while acknowledging events subsequent to the immigration judge's decision, the BIA did not take judicial notice of those facts or consider their effect on petitioner's application for asylum. See E.R. 4-5. Rather, the BIA evaluated "the asylum claim on the basis of the evidence before the immigration judge at the time of his decision." E.R. 5 (citing Castillo-Villagra ). The BIA complied with the requirements of Castillo-Villagra.
 
 
 6
 Petitioners' claim that he did not receive a full and fair immigration hearing because of discrepancies between his asylum application and his testimony is similarly without merit. Though the BIA noted the inconsistencies between the application and petitioner's testimony, it found that even if all the hearing testimony were true, the petitioner could not establish a valid asylum claim. E.R. 2 n. 2.
 
 
 7
 III. PETITIONERS HAVE NOT SHOWN EITHER A WELL-FOUNDED FEAR OF PERSECUTION OR PAST PERSECUTION IN NICARAGUA
 
 
 8
 Chavez-Dinarte's request for asylum fails because any adverse treatment he would encounter upon his return to Nicaragua would be on account of his desertion from the military. "It is a 'long standing rule' that it is not persecution for a country to require that its citizens serve in the military." Ubau-Marenco v. INS, 67 F.3d 750, 754 (9th Cir.1995) (citations omitted). However, punishment for refusal to serve in the military would constitute persecution if the refusal to serve was "based on objection to participation in inhuman acts as part of forced military service," Ramos-Vazquez v. INS, 57 F.3d 857, 863 (9th Cir.1995) (citation omitted), or where the deserter suffered disproportionately severe punishment because of religious, political, or other protected beliefs. Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990); Barraza Rivera v. INS, 913 F.2d 1443, 1451 (9th Cir.1990). Chavez-Dinarte could also show persecution if he demonstrated that he was singled out for induction into the military because of his political views or other protected characteristics. Alonzo, 915 F.2d at 548.
 
 
 9
 Chavez-Dinarte has not shown that any punishment he would receive as a result of his desertion would constitute persecution. He did not allege that he was required to perform any inhuman acts as a member of the Navy.[1] He did not allege that he would be punished disproportionately for his desertion because of his opposition to the Sandinistas. See E.R. 59. He was not recruited into the Navy because of his political beliefs; rather, he was convinced to join in the false belief that it would aid his efforts to have his brother released from prison. E.R. 42. Because the record reveals that petitioner did not reveal his political beliefs to anyone in the military, any prosecution he suffers for desertion would not amount to political persecution. Alonzo, 915 F.2d at 548.
 
 
 10
 We reject Chavez-Dinarte's contention that the BIA violated the "Act of State Doctrine" by failing to yield to determinations by the Executive and Legislative branches that the Sandinistas were not the legitimate government of Nicaragua. While "the conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative ... Departments," Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423 (1963) (citation omitted), Chavez-Dinarte overlooks the fact that the Immigration Judge and the BIA are themselves a part of the Executive Department. Because "[t]he doctrine reflects the prudential concern that the courts, if they question the validity of sovereign acts taken by foreign states, may be interfering with the conduct of American foreign policy by the Executive and Congress," Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir.1992) (emphasis added), cert. denied, 113 S.Ct. 1812 (1993), it places no restrictions upon one division of the Executive branch in its consideration of the policies of another division of the Executive branch.
 
 
 11
 Indeed, the "Act of State Doctrine" counsels a very limited examination of the legitimacy of the Sandinista military by this court. See Kaveh-Haghigy v. INS, 783 F.2d 1321, 1323 (9th Cir.1986) ("Absent exceptional circumstances, it is not the place of the judiciary to evaluate the political justifications of the actions of foreign governments."). Thus, rather than deferring to the State Department's assessment of the Sandinistas in the 1980's, we evaluate the BIA's conclusion that the Sandinista military is the Nicaraguan military under the same deferential substantial evidence standard applied to other findings of fact.
 
 
 12
 There is substantial evidence to support the BIA's finding that the Sandinista military was the military of Nicaragua. When asked by his own counsel, "Do you consider or did you consider the Sandinista military to be the national military of Nicaragua?" Chavez-Dinarte responded, "Yeah, military from a dirty party." E.R. 52. This statement appears to be an acknowledgement by Chavez-Dinarte that the military, though dominated by the Sandinistas, was nonetheless the military of Nicaragua. The State Department itself determined, based on the information supplied to it, that Chavez-Dinarte would not face persecution in Nicaragua sufficient to qualify him for asylum. Administrative Record at 105. Finally, the Sandinista army was officially recognized by the Constitution of Nicaragua as the country's official army in 1987. E.R. 19-20, 91-92. The BIA's conclusion is consistent with this court's holdings in other cases that asylum applicants' objections to service in the Nicaraguan military did not establish a well-founded fear of persecution. See Ubau-Marenco, 67 F.3d at 754; Castillo v. INS, 951 F.2d 1117, 1122 (9th Cir.1991).
 
 
 13
 Chavez-Dinarte's situation is distinguishable from that of the asylum applicant in In re Izatula, Inter.Dec. (BIA) 3127 (1990). In addition to evading conscription into the Afghan army, Izatula spent three years supplying the Mujahedin with clothes, groceries, and other supplies. The BIA held that any prosecution he faced in Afghanistan for avoiding military conscription would not amount to persecution, id. at * 4, however, prosecution on account of his aiding the Mujahedin would have constituted persecution because of political activities. Id. at * 4-5.
 
 
 14
 Here, Chavez-Dinarte is only facing prosecution for military desertion. None of the treatment of his wife while he was in hiding was based on petitioner's political beliefs. The military officials who came looking for Chavez-Dinarte never asked Adan-Areas about his political beliefs, and only asked her about her own beliefs on one occasion. E.R. 69. While petitioners characterizes the graffiti on their home as a "death threat," the record does not support such a characterization and reveals no violence against Adan-Areas.[2] Instead, she was able to run her business while petitioner was in hiding (E.R. 71), visit him on weekends (E.R. 74), and acquire a passport and leave the country without harassment. E.R. 75. In short, the record reveals substantial evidence that Chavez-Dinarte and his family did not carry their burden of demonstrating a fear of persecution or past persecution that would entitle them to asylum.
 
 CONCLUSION
 
 15
 For the foregoing reasons, we AFFIRM the BIA's denial of asylum and grant of voluntary departure.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although petitioner's wife testified that petitioner deserted because he objected to the killing and persecution of Contras and civilians that he had observed on the Atlantic Coast of Nicaragua, E.R. 65, petitioner stated only that he deserted because he was tired of being deceived about his brother, E.R. 49, and he did not agree with the politics of the Sandinistas. E.R. 51
 
 
 [2]
 The alleged threats of imprisonment and searching of her home are consistent with the actions of military officials looking for a deserter. See E.R. 55