91 F.3d 155
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Silvio Jose TURCIOS-CHAVARRIA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70086.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1996.
Decided July 5, 1996.
 
 1
 Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Silvio Jose Turcios-Chavarria seeks review of the Board of Immigration Appeals' (BIA) affirmance of the Immigration Judge's (IJ) denial of his application for asylum and for withholding of deportation. We deny the petition for review.
 
 
 4
 * Petitioner first argues that the BIA decision denying asylum is not supported by substantial evidence. The BIA can only be reversed if the "evidence presented ... [is] such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed," and its decision must be upheld if supported by substantial evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).
 
 
 5
 To successfully demonstrate a well-founded fear of future persecution, the petitioner must show (1) a subjective fear of persecution; and (2) an objective, reasonable fear of persecution. Hartooni v. INS, 21 F.3d 336, 341 (9th Cir.1994). No one questions the veracity of Turcios' statements, and neither the BIA nor the IJ have suggested otherwise. We therefore assume that his testimony was accepted as credible, and find that he has satisfied the subjective prong of the test.
 
 
 6
 However, petitioner fails to meet the second prong of our analysis, since he has not demonstrated "credible, direct, and specific" evidence of facts that would objectively support his fear of persecution. See Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995).
 
 
 7
 To support his showing of a fear of future persecution, Turcios claims that the government will view his desertion from active military duty at the Ministry of the Interior as a serious act of treason given the prominent role of his family in Nicaraguan society and the fact that he benefitted from his prior association with the Sandinista party. He also asserts that the Sandinistas still exercise significant authority in the government, and that they will use this influence to persecute him despite laws that protect him from official punishment. Finally, he claims that his arrest warrant was issued for purely political reasons. We find Turcios' claims without merit.
 
 
 8
 First, the Sandinistas no longer control the government, and President Violeta Chamorro has declared an amnesty for all military deserters. Although Sandinistas occupy positions of authority within the Chamorro government, petitioner provides no evidence, other than his own opinion and that of a discredited witness, to support his claim that the Sandinistas independently seek retribution against military deserters like himself.
 
 
 9
 Second, there was no evidence that Turcios was persecuted during his time in Nicaragua, including the two years after his desertion, and this paucity of evidence cuts against Turcios' claim. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988). The record shows that Turcios took advantage of his family name and connections in order to gain employment at the Ministry of the Interior. When called by the Ministry to serve in its forces, he soon deserted. Growing a beard to disguise himself, but still using what he described as a well-known family name, Turcios lived with his brother and mother-in-law in the Nicaraguan countryside for two years.[1] Finally, Turcios bribed friends at the Ministry of the Interior in order to obtain the necessary passport and exit papers, all of which used his real name. Leaving his common-law wife and three children, Turcios passed through immigration control, presented his passport, which had a clean-shaven photograph of himself, and left the country without incident. Since his departure and the change in government, it appears that his common-law wife, his children, his brothers, and his sisters, have remained in Nicaragua without harm despite their relation to petitioner.
 
 
 10
 There is also no merit to the claim that the government sought to persecute Turcios for his political beliefs. It merely sought to prosecute him for his desertion from the military. As clearly stated in the arrest order, Turcios was wanted for deserting military service, not for his political beliefs or disaffection with the government. It is a "long-standing rule that it is not persecution for a country to ... require military service of its citizens." Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). For his arrest warrant to be evidence of a well-founded fear of persecution, Turcios must show that he faces a "disproportionately severe" punishment for his desertion. Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990). But petitioner no longer faces punishment of any sort because Chamorro has declared an amnesty for deserters.
 
 
 11
 In addition, to support a claim disproportionate punishment based on political beliefs, Turcios must demonstrate that the government actually knew of these beliefs and, as a result, issued the arrest warrant. See Alonzo v. INS, 915 F.2d 546, 548 (9th Cir.1990) (to demonstrate disproportionately severe punishment, alien must show government attempted to conscript him while knowing of his political beliefs). Here, there is no evidence that petitioner ever communicated his sudden disillusionment with the Sandinistas to any government official, and there is no indication that the arrest warrant was based on any factor other than his desertion from active duty. As the State Department's Bureau of Human Rights and Humanitarian Affairs stated, Turcios merely "left [Nicaragua] to avoid military reserve duty."
 
 
 12
 Furthermore, the BIA is not limited to the state of affairs at the time of the initial hearing with the IJ, but may also take notice of changed circumstances between the IJ and the BIA hearings. See Gonzales v. INS, 82 F.3d 903, 911 (9th Cir.1996) (holding that if BIA decides case on basis of evidence as it stood when its hearing concluded, there is no violation of due process). In this situation, such changes include the increased solidity of the Chamorro government, and the fact that, despite four years of the amnesty, the petitioner failed to offer "even one instance in which the Sandinistas, following their removal from power, have imprisoned or otherwise harmed or have sought to harm any individual similarly situated to the respondent upon their return to Nicaragua." In re Turcios-Chavarria, Awx-uum-kwu, at 3 (BIA Dec. 19, 1994). The reliance of the BIA on the change of government, and the grant of amnesty by Chamorro, was entirely appropriate, because the BIA granted petitioner an opportunity to demonstrate that despite these changes, he still feared future persecution. See Gonzalez v. INS, 82 F.3d 911-912; Castillo-Villagra v. INS, 972 F.2d 1017, 1029 (9th Cir.1992).
 
 
 13
 Finally, Turcios claims that state security forces have come to the home of his common-law wife, inquired as to his whereabouts, and painted slogans on her home. Turcios' testimony, however, is quite vague, and at points contradictory. It is unclear whether these individuals are actually plain-clothes security officers, or private citizens. In addition, it is not certain when these incidents occurred. It is possible that much of this activity may have ceased after the change in government or the declaration of amnesty. Also, the record does not state what the slogans said, and what the individuals specifically asked and allegedly threatened. Given the nature of this testimony, we do not find that it alone supports a finding that petitioner is at "particular risk" and that "his predicament is appreciably different from the dangers faced by [his] fellow citizens" or other military deserters. Kotasz v. INS, 31 F.3d 847, 852 (9th Cir.1994).
 
 
 14
 We find that the BIA's determination that there was not enough evidence to establish an objective fear of future persecution is substantially supported by the record.
 
 II
 
 15
 The claim for mandatory withholding of deportation is likewise denied, since "failure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well." Ghaly, 58 F.3d at 1429.
 
 III
 
 16
 Finally, Turcios claims that while the IJ never explicitly rejected the credibility of his testimony, he did so implicitly. Thus, he argues that the BIA erred in refusing to remand or reverse his appeal based on the IJ's failure to make adverse credibility findings concerning his testimony, as is required when the IJ finds the applicant's testimony incredible. The record does not support the contention that there was an implicit rejection of this test. First, it is not necessary to make adverse credibility findings in all cases when the IJ rules against the applicant. See In re Vigil, 19 I. & N.Dec. 572 (Interim Decision) (BIA1988). Second, we only review the opinion of the BIA, which accepted petitioner's testimony as credible. When the BIA opinion is silent with respect to the issue of credibility, it is assumed that the petitioner's testimony was accepted as truthful. Canjura-Flores v. INS, 784 F.2d 885, 889 (9th Cir.1985). As outlined in Part I, the BIA simply found that petitioner's testimony, though credible, was not enough to satisfy the objective prong of the fear of future persecution test.
 
 
 17
 Accordingly, the petition for review is DENIED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 18
 Accepting petitioner's testimony as true, as the majority acknowledges we must, I believe that petitioner clearly established that he has a valid reason to fear persecution if he were to be returned to Nicaragua. At the time of the hearing, petitioner testified that he had spoken regularly with his common-law wife and that he had done so recently. He further testified that she advised him that members of the state security forces "are looking for me and actually they have come to the house ... and painted slogans on the house and threatened me." AR at 131. When asked if members of the security forces had inquired about him individually since the change in government, petitioner stated that indeed they had. He also explained that the security forces had not been affected by the change in government since their membership had not changed. AR at 143-44. Clearly, if the state security forces, which as of the time of the hearing were admittedly controlled by the Sandinistas, continued to make inquiries about petitioner and to threaten him, petitioner established that he was at particular risk; for those with reason to persecute him also had the ability and desire to do so. Under these circumstances, the fact that the Chamorro government had granted amnesty to military deserters and had agreed not to prosecute them is entirely irrelevant. I would only add that there is no statement in the BIA decision suggesting that the facts regarding the security forces generally or their interest in petitioner in particular had changed between the time of the hearing before the immigration judge and the date the BIA decision was issued. Accordingly, I conclude that petitioner has established a well-founded fear of persecution, and dissent from the majority's denial of his petition. I would remand to the BIA so that it could exercise its discretion under 8 U.S.C. § 1158(a).
 
 
 
 *
 Hon. Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 His brother, Oscar Turcios, was a founder of the Sandinista movement, and became a national hero after he was killed in battle fighting for his cause