Gustavo TECUN–FLORIAN, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 98–70682.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1999

Filed March 14, 2000

---

**1108**

Manuél Rios, Salazar Law Offices, Seattle, Washington, for the petitioner.

Greg Mack, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: FERGUSON, REAVLEY,* and TROTT, Circuit Judges.

REAVLEY, Circuit Judge:

Gustavo Tecun–Florian, a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal of the immigration judge's decision denying his request for asylum and withholding of deportation.[1] We must deny the petition.

We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). The proceedings against Tecun–Florian commenced before April 1, 1997, and the amended Act therefore does not apply. We review BIA decisions under the "substantial evidence" standard.[2]

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

I.

*Facts*

Before entering the United States in December 1991, Tecun–Florian lived in Nacinta, Guatemala. Anti-government guerilla forces attempted to recruit new members in Nacinta about every eight days. They would take the residents to the town's ball field and talk with them as part of their recruitment effort. On other days, the Guatemalan army would similarly round up the residents and discourage them from supporting the guerillas.

Although Tecun–Florian refused to join the guerillas because they "were against the government" and "killing people" in violation of his sincerely held religious beliefs, he never told the guerillas this at the recruitment sessions. The guerillas could see that Tecun–Florian attended the Catholic church, and he believed that the guerillas learned his name by listening to children who called out to him on his way there.

On January 21, 1991, the guerillas kidnaped Tecun–Florian from a local restaurant and tortured him for ten days. A human rights group finally convinced the guerillas to free Tecun–Florian. He went into hiding for a month and then left for the United States in December 1991. Tecun–Florian's sister testified that the guerrillas most recently questioned her family about Tecun–Florian's whereabouts ten days before the asylum hearing.

When asked what the guerillas' motivation for torturing him was, Tecun–Florian testified on direct examination that "they had asked me to join the group and since I didn't want to do it, that's why they were going to kill me." On cross-examination, he likewise testified that "they kidnapped me because I didn't want to join their group."

---

1. 8 U.S.C. § 1158(a); 8 U.S.C. § 1253(h).

2. *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997).

Tecun–Florian's sister gave the following opinion of why her brother did not want to join the guerillas and why the guerillas tortured her brother:

> Our religion doesn't allow us to belong to that type of group because that type of group hurt people and our religion tells us that's not good. Our religion tells us to do good to the people. And, probably, that's why they sequestered him because they didn't like that he didn't want to be part of their group.

After living in the United States for three years, the Immigration and Naturalization Service raided Tecun–Florian's employer and detained him. Tecun–Florian did not dispute his deportability, but he contended that he was eligible for asylum.

Tecun–Florian and his sister testified at the asylum hearing before the immigration judge. After taking evidence, the immigration judge found Tecun–Florian and his sister to be credible. The immigration judge also found, however, that there was "no evidence that the guerrillas ... were persecuting him due to his religious beliefs or political beliefs or opinions" and denied his application for asylum and withholding of deportation. The BIA, reviewing the record *de novo*, reached the same conclusion and found "that the respondent has not satisfactorily established that he faces persecution 'on account of' a qualifying ground."

## II.

### *Discussion*

An alien "may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of [8 U.S.C.] section 1101(a)(42)(A)."[3] A refugee is a person who is unwilling to return to his country because "of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[4]

In *INS v. Elias–Zacarias*, the Supreme Court held that, in order to establish refugee status, an alien must demonstrate that the persecution against the alien must be actually motivated by one of the characteristics enumerated in 8 U.S.C. § 1101(a)(42)(A).[5] Applying the substantial evidence standard, the Court then held that a guerilla organization's attempt to force a person to join them, absent additional evidence that the conscription was motivated by that person's political opinion, was insufficient to compel the BIA to find persecution *because of* political belief.

■ Although the record demonstrates that Tecun–Florian refused to join the guerillas because the guerillas' actions violated his religious beliefs, the BIA could reasonably determine that the guerillas tortured Tecun–Florian solely in retribution for refusing to join their group—and not because of his religious or political beliefs. Tecun–Florian testified that the guerrillas told him that they were persecuting him because he refused to join them, and he himself believed that the guerillas acted out of retribution for his refusal to join. Tecun–Florian's sister also testified that she believed the guerillas kidnapped her brother because he refused to enlist with them. The only evidence suggesting that the guerillas were motivated by anything other than his refusal to join them was the fact that they watched him going into the church. Bound by the authority of *Elias–Zacarias*, we must hold that the evidence presented was not "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."[6]

■ On appeal, Tecun–Florian asserts that the guerillas persecuted him because they *believed* that he held political beliefs contrary to their own ideology. Citing

---

**3.** 8 U.S.C. § 1158(a).

**4.** 8 U.S.C. § 1101(a)(42)(A).

**5.** 502 U.S. 478, 483–484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

**6.** *Id.* at 483–484, 112 S.Ct. 812.

*Canas–Segovia v. I.N.S.,* he correctly states our holding that "[i]mputed political opinion is still a valid basis for relief after *Elias–Zacarias.*"[7] But, as discussed, the only evidence suggesting that the guerillas were motivated by anything other than Tecun–Florian's refusal to join them was the testimony that they saw him going to church. We cannot say that the BIA was unreasonable in finding that the guerillas' actions were not motivated by the guerillas' perception of Tecun–Florian's religious beliefs or political opinion.

Finally, Tecun–Florian contends that the guerillas persecuted him because of the political beliefs of his family.[8] The only support for this argument is the fact that two of his brothers served in the civil patrol in Guatemala and one of those brothers also served in the Guatemalan army. Neither Tecun–Florian nor his sister testified, however, that their brothers' civil patrol and army service motivated the guerillas to kidnap and torture Tecun–Florian.

PETITION DENIED.

FERGUSON, Circuit Judge, dissenting:

Both the Immigration & Naturalization Service and the majority contend that people persecuted because they engage in expression inspired by religious belief are not entitled to asylum in America. This is wrong. The majority's holding contains several errors. First, it erroneously concludes that the Supreme Court's holding in *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), precludes Mr. Tecun–Florian from obtaining asylum. Second, it fails to consider this Circuit's law on imputed political opinion, which requires that we grant him relief from deportation. Third, it incorrectly limits the type of evidence a person can use to prove persecution on account of imputed political opinion. I dissent.

**A. *Factual Background.***

Mr. Tecun–Florian is a 36 year-old native and citizen of Guatemala who fled to the United States in December of 1991 to escape from the guerrillas who had subjected him to ten days of ruthless torture.[1] Although the BIA recognized that Mr. Tecun–Florian had suffered torture, it denied his asylum application after concluding that he could not prove that the torture was on account of any protected ground. In so holding, the BIA failed to consider Mr. Tecun–Florian's contention that the guerrillas persecuted him on the basis of an imputed political opinion. He has asked this court to grant him asylum because he fears that the same guerrillas who kidnapped and tortured him will kill him if we force him to return to his home country.

Before fleeing to the United States, Mr. Tecun–Florian lived a deeply religious life in a small Guatemalan town called Nancinta. He attended the town's only Catholic church every Friday and Sunday "just to listen to the—to God's word." He participated in many of the Church's activities. As he put it at his asylum hearing, "that's what I did all the time."

At the time, a group of guerrillas was actively trying to recruit Mr. Tecun–Florian, whose faith prohibited him from joining its ranks. Every eight days, the guerrillas gathered Mr. Tecun–Florian and other villagers and demanded that they join the cause. Many resisted for various reasons; as a Catholic, Mr. Tecun–Florian followed the Church's teaching that killing for any purpose is wrong and he refused to join. As he explained at the asylum hearing, "I had my religion and my reli-

---

**7.** 970 F.2d 599, 601 (9th Cir.1992).

**8.** *See Del Carmen Molina v. I.N.S.,* 170 F.3d 1247 (9th Cir.1999).

**1.** "We have held that where an IJ expressly finds the testimony of an applicant to be cred-

ible, and where the BIA makes no finding to the contrary, we accept the testimony given before the IJ as undisputed." *Mgoian v. INS,* 184 F.3d 1029, 1032 (9th Cir.1999). Since the IJ found Mr. Tecun–Florian credible, and the BIA did not disagree, we must regard his testimony as undisputed.

gion doesn't allow that one goes around killing people." The guerrillas in town knew of Mr. Tecun–Florian's devotion to the Catholic faith because, he testified, "they could see that we used to go that church." They skulked outside of his church, watching him as he went in. In fact, this is how they learned his name, "because when I—as I was going to church, other children would call my name . . . ."

On January 21, 1991, the guerrillas abducted Mr. Tecun–Florian. He and a friend were at a local eatery, where he noticed several armed men drinking beer. When Mr. Tecun–Florian went outside, five of the men followed him, pointed their guns at him, and ordered him to stop. He implored them to leave him alone, telling them that he did not owe anyone anything. But they grabbed him, forced him into the back of their truck, tied his hands behind him, and brutally beat him. They left his friend behind.

Over the following day and night, as the truck rumbled along, the guerrillas deprived Mr. Tecun–Florian of food and water and repeatedly hit him. At one point, they stopped the truck, dragged him to the edge of a cliff, and threatened to kill him and dump his corpse below. During another stop, his beer-drinking captors rammed the butts of their rifles over and over again into Mr. Tecun–Florian's neck and stomach.

Once they got to their destination in Barbarena, the guerrillas tortured Mr. Tecun–Florian for another ten straight days. They starved him. They beat him. They ripped off every one of his toenails with a set of pliers. Every day, they warned him that, "[t]omorrow we will kill you." At one point, they forced him to stand for an entire day and night under a faucet that dripped cold water onto his head, slowly filling the closet-sized room where he was kept. When the water reached his shoulders, the guerrillas finally let him out. But the effect of prolonged immersion in cold water rendered him so stiff that he could hardly walk.

Although the guerrillas did not specifically list their reasons for torturing Mr. Tecun–Florian, they did state that they were going to kill him because he refused to join their movement: "because I didn't—I didn't join them, that's why they were going to kill me." His sister also stated that he was probably kidnaped because his "religion tells them to do good for people." Notably, they did not ask him or his family for ransom money. Nor did they ask him to become a guerrilla. According to Mr. Tecun–Florian, he is the only person in Nancinta the guerrillas have targeted and subjected to such treatment.

After ten days of torture, members of a human rights group convinced the guerrillas to let Mr. Tecun–Florian go. He feared them when they showed up, suspecting that they too wanted to kill him. Instead, they took him to a hospital where he was treated for the injuries the guerrillas had inflicted. When the hospital released him, he went into hiding.

After a month in hiding, Mr. Tecun–Florian decided to flee Guatemala. His father encouraged him because "he will prefer to see him far away instead of dead." Mr. Tecun–Florian agreed, explaining at his asylum hearing that he fled Guatemala "[b]ecause I was afraid that they—I am afraid that they will get me again, grab me again, and I'm afraid they will do the same things that they did to me." He hears from relatives that the guerrillas have continued to look for him once a month. In fact, they inquired as to his whereabouts ten days before the asylum hearing.

### B. Controlling Law.

I dissent for two reasons. First, I disagree that the Supreme Court's holding in *Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38, precludes Mr. Tecun–Florian from obtaining relief. Second, this Circuit's law on imputed political opinion, which the majority discusses nowhere in its holding, requires that we grant Mr. Tecun–Florian's petition.

1. *Elias–Zacarias Does Not Bar Mr. Tecun–Florian's Petition.*

The majority incorrectly believes that Mr. Tecun–Florian's case is foreclosed by *Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. 812. Maj. op. at 1109. But the holding in *Elias–Zacarias* is not as broad as the majority makes it out to be. The Supreme Court held simply that a guerilla group's attempt to conscript a person does not *"necessarily"* constitute persecution on account of a protected ground. *Id.* at 481–82, 112 S.Ct. 812 (emphasis added). It based this holding on two reasons: first, that a person might refuse to join for a variety of non-political reasons, including a fear of fighting or a preference to stay at home; and, second, the attempt to recruit the person could simply reflect the need to strengthen its military power. *Id.* at 482, 112 S.Ct. 812. The Court held that Elias–Zacarias could not obtain asylum both because his refusal to join was based on a fear "that the government would retaliate against him and his family if he did so" and he could not show that the guerrilla group's motive for recruiting him was anything more than an attempt to boost its military power. *Id.* at 482, 112 S.Ct. 812. Most important, the Court emphasized in *Elias–Zacarias* that there was no evidence that the petitioner in that case held any political opinion which motivated his decision to resist joining the guerrillas. "The record in the present case not only failed to show a political motive on Elias–Zacarias' part; it showed the opposite." *Id.* at 482, 112 S.Ct. 812. The absence of any political motive was the key to the Court's holding that Elias–Zacarias was not eligible for asylum.

Thus, *Elias–Zacarias* does not stand for the general proposition that persecution following a refusal to assist can never constitute a basis for seeking asylum. Indeed, such a result would plainly contradict the terms of the asylum statute, which authorize the Attorney General to grant asylum whenever an applicant establishes well-founded fear of persecution on ac-

count of a protected ground. *See, e.g., Borja v. INS,* 175 F.3d 732, 736 (9th Cir. 1999) (en banc) (finding applicant eligible for asylum where refusal to assist guerrillas was on account of protected ground and guerrillas knew of basis for refusal). Instead, the Court in *Elias–Zacarias* held only that asylum was unavailable to a person whose refusal was based on a nonprotected ground, like "fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." *Id.* at 482, 112 S.Ct. 812.

*Elias–Zacarias* does not require us to deny Mr. Tecun–Florian's petition. First, unlike Elias–Zacarias whose fear of retaliation by the government caused him to refuse to join the guerrillas, Mr. Tecun–Florian had a political motive for resisting the guerrillas. The tenets of his Catholic faith taught him to refuse anyone who asked him to participate in killing other human beings. We have found that similar beliefs constitute a political opinion. *See Borja v. INS,* 175 F.3d at 736 (labeling the belief that a group "kill[s] people, women and children" a political opinion); *Lazo–Majano v. INS,* 813 F.2d 1432, 1435 (9th Cir.1987) (holding that the belief that Armed Force is responsible for lawlessness, rape, torture, and murder constitutes a political opinion), *overruled on other grounds by Fisher v. INS,* 79 F.3d 955 (9th Cir.1996). Even though Mr. Tecun–Florian's captors did not specifically say that this was the reason for torturing him, it can be inferred based on the circumstantial evidence in this case. Indeed, the record demonstrates that they abducted and tortured him after watching him regularly attend Church, the same house of worship that taught its congregants to resist the guerrillas' cause because of its killing of human beings. This is sufficient to grant asylum.

2. *Mr. Tecun–Florian Is Entitled to Relief Under Our Circuit's Law on Imputed Political Opinion.*

Mr. Tecun–Florian is entitled to asylum because his persecutors imputed a political

opinion to him and persecuted him for it. The statute governing asylum requires that a petitioner alleging persecution present evidence to show the existence of "persecution on account of" several protected grounds. 8 U.S.C. § 1101. Generally, the statute requires that the petitioner prove the persecutor's motive. We have held that, "[p]ersecution on account of imputed political opinion, however, satisfies the motive requirement, whether or not that imputation is accurate." *Lopez–Galarza v. INS*, 99 F.3d 954, 959 (9th Cir.1996). Moreover, "[i]mputed political opinion is still a valid basis for relief after Elias–Zacarias." *Canas–Segovia*, 970 F.2d at 601.

As Mr. Tecun–Florian points out in his brief, our holding in *Canas–Segovia v. INS*, 970 F.2d 599, 601–02 (9th Cir.1992), requires that we grant his petition. There, the petitioner claimed that his religion prevented him from joining the military in his native country of El Salvador. The penalty for such resistance was harsh: six months to fifteen years in prison. Faced with the possibility of imprisonment, the petitioner fled to this country and argued to our Court that he was entitled to asylum on the ground of an imputed political opinion.[2] We agreed, concluding that the facts compelled a finding that his persecutors would falsely attribute an opinion to him. *Id.* at 602.

The facts of this case are virtually indistinguishable from those in *Canas–Segovia*. Like Canas–Segovia, Mr. Tecun–Florian contends that his religion does not permit him to fight in a war. The penalty for his resistance, like that in *Canas–Segovia*, was indeed harsh: his persecutors abducted him, and tortured him for ten straight days. The facts in this case cry out even more for relief than those in *Canas–Segovia* because the guerrillas here knew of

Mr. Tecun–Florian's religious devotion. We should accordingly grant his petition.

The majority not only does not consider our holding in *Canas–Segovia*, but also incorrectly believes that Mr. Tecun–Florian cannot obtain asylum because he did not communicate directly to the guerrillas the religious reasons for his resistance. Contrary to the majority's suggestion, we have held that "the absence of such an assertion is not determinative of establishing" persecution "on account of" "a protected ground" as long as there is "some indication" that the person's "conduct or life-style alerted" the persecutors of beliefs protected by the statute. *Alonzo v. INS*, 915 F.2d 546, 547–48 (9th Cir.1990).

More important, we have previously refused to require that a petitioner tell his persecutors that his religion is the cause of resistance, reasoning that the contrary "analysis assumes . . . that the persecutors would believe [him] and that the [petitioner] could communicate the information before any harm befell [him]." *Canas–Segovia*, 970 F.2d at 602. In doing so, we followed the Supreme Court's directive in *Elias–Zacarias*. Recognizing the problems applicants would have in proving the motive of their persecutors, the Court stated that, "Elias–Zacarias objects that he cannot be expected to provide direct proof of his persecutors' motives. *We do not require that*." 502 U.S. at 483, 112 S.Ct. 812 (emphasis added). Instead, the Court stressed that such evidence could be "*direct or circumstantial.*" *Id.* (emphasis added). Our Court has previously followed this rule. Writing for the court, Judge Trott recently stressed that a petitioner can use circumstantial, rather than direct, evidence to show imputed political opinion. *See, e.g., Cordon–Garcia v. INS*, 204 F.3d 985, 991 (9th Cir.2000) ("To es-

---

**2.** The facts of the case can be found in *Canas–Segovia v. INS*, 902 F.2d 717, 720 (9th Cir. 1990), *vacated on other grounds by* 502 U.S. 1086, 112 S.Ct. 1152, 117 L.Ed.2d 401 (1992). Our court reaffirmed that the petitioner had suffered persecution on account of an imputed political opinion on remand,

when we wrote that, "[w]e held in the original opinion that the Canas–Segovias were entitled to relief based on the theory of imputed political opinion. Nothing in Elias–Zacarias changes our analysis. Jose is entitled to relief on this basis." *Canas–Segovia*, 970 F.2d at 602.

tablish an imputed political opinion, Petitioner must show, through direct *or circumstantial evidence*, that the guerillas actually imputed a political opinion to her and persecuted her for that opinion.") (emphasis added).

There are many examples illustrating the point. For example, in *Vera–Valera v. INS*, 147 F.3d 1036, 1039 (9th Cir.1998), we held that the petitioner had suffered persecution on account of an imputed political opinion based on his affiliation with a group that had no political affiliation. Vera–Valera became a member, and eventually President, of a cooperative of street vendors that had "had no direct political affiliation, although members of the cooperative had different political ideas." *Id.* at 1037. When he came out in favor of the construction of a building in which the cooperative's vendors could sell their products, he began to receive threats from an anti-government group warning him to end his support for the project. *Id.* at 1037. We held that the petitioner's association with a project an anti-government group opposed and associated with the government, coupled with threats against his life, constituted persecution on account of an imputed political opinion. *Id.* at 1039.

Similarly, in *Meza–Manay v. INS*, 139 F.3d 759, 764 (9th Cir.1998), we concluded that the petitioner had suffered persecution on account of an imputed political opinion based on two crucial facts which are present in this case. Meza–Manay claimed that an anti-government group associated her with the government because her husband worked with the police to combat terrorism. She and her family eventually became targets for attacks and threats, although the group did not specifically tell them why. We held that these attacks "compel the reasonable inference that Meza–Manay was perceived to be a political opponent of the Shining Path." *Id.* at 764. We accordingly granted her petition.

The majority could not distinguish these cases from Mr. Tecun–Florian's even if it tried, which it does not. As the majority concedes, "the record demonstrates that Tecun–Florian refused to join the guerillas because the guerillas' actions violated his religious beliefs." Maj. op. at 1109. The majority's refusal to grant Mr. Tecun–Florian's petition apparently stems from its mistaken belief that he must present direct evidence of persecution on account of an imputed political opinion. But that is not the law. As I have already explained, a petitioner can use either direct *or* circumstantial evidence to make out such a claim. *See, e.g., Cordon–Garcia*, 204 F.3d at 991.

Mr. Tecun–Florian has presented circumstantial evidence which compels a finding of persecution on account of imputed political opinion. Before he fled Guatemala, he was deeply devoted to the Catholic faith, attending its services twice a week and actively participating in its other activities. His faith taught him that killing for any purpose is wrong. It was for this reason that he resisted joining the guerrillas' cause despite their many efforts to conscript him. The guerrillas knew of his devotion to Catholicism because they routinely watched him enter the small town's only church. The punishment the guerrillas exacted for his religious devotion and resistance to their cause turned out to be horrible: they abducted him and tortured him for ten straight days. The daily attacks he endured, like the assaults on Meza–Manay and her family, "compel the reasonable inference that [Mr. Tecun–Florian] was perceived to be a political opponent of the [guerilla group]." *Meza–Manay*, 139 F.3d at 764. And as the State Department's 1994 country report makes clear, religious personnel have suffered attacks and are still "threatened on political grounds for their human rights, indigenous rights, and land reform activities." Mr. Tecun–Florian has indeed suffered persecution on account of an imputed political opinion.

## CONCLUSION

I dissent from the majority's holding today because it disregards both the rec-

ord in this case and our Circuit's cases holding that persecution on account of imputed political opinion is a basis for obtaining asylum in America. Contrary to today's holding, Mr. Tecun–Florian has established that he suffered persecution on account of a protected ground. Since the evidence he presents compels reversal, we should remand to the BIA for a determination on whether the INS can rebut a presumption that his fear of returning is objectively reasonable.